No. 14,014.

## VANVACTOR v. THE STATE.

TEACHER AND PUPIL.—*Right to Exact Obedience.*—*Corporal Punishment.*—A teacher, within the limits of his jurisdiction and responsibility, may exact compliance with all reasonable commands, and may, in a kind and reasonable spirit, inflict corporal punishment upon a pupil for disobedience.

SAME.—*Reasonableness of Punishment.*—*Judgment of Teacher.*—The punishment ought to be within the bounds of moderation and apportioned to the gravity of the offence, but when complaint is made, the judgment of the teacher as to what the situation required should have weight, as in the case of a parent under similar circumstances, and the reasonableness of the punishment must be determined upon the facts of the particular case.

SAME.—*Assault and Battery.*—*Intent.*—*Burden of Proof.*—In the case of the chastisement of a pupil, the intent necessary to support a charge of assault and battery may be inferred from the unreasonableness of the method adopted or the excess of force employed, the burden of proving which rests upon the State.

SAME.—*Presumptions in Teacher's Favor.*—In such case, in addition to the general presumption of innocence, the teacher, in support of his defence, has the presumption of having done his duty.

SAME.—*Object of Chastisement.*—*Causing Pain and Abrasions.*—The legitimate object of chastisement is to inflict punishment by the pain which it causes as well as by the degradation which it implies; and it does not follow that a chastisement was cruel or excessive because pain was pro-

Vanvactor v. The State.

duced or abrasions of the skin resulted from a switch used by the teacher.

SAME.—*Determining Character of Chastisement.*—When a proper weapon has been used, the character of the chastisement, with reference to any alleged cruelty or excess, must be determined by the nature of the offence, the age, physical and mental condition, as well as the personal attributes, of the pupil, and the deportment of the teacher.

From the Marshall Circuit Court.

*A. C. Capron,* for appellant.

*C. P. Drummond,* Prosecuting Attorney, for the State.

NIBLACK, J.—During the month of February, 1887, and for some time afterwards, the appellant, Tyner Vanvactor, was a teacher in, and as such had charge of, one of the public schools of Marshall county. He was at the time only eighteen years of age. Edward Patrick, a boy then nearly sixteen years old, was one of his pupils. On a Friday afternoon during that month, while the school was in session, Vanvactor directed Patrick to bring in some wood and put it in the stove which warmed the school-room. Patrick did as directed, but while engaged about the stove, and while Vanvactor's face was turned in another direction, he made some antic demonstrations which created a general laugh amongst the other attending children, and made a break in the school exercises. Vanvactor, as a punishment for this breach of good order, required Patrick to stand up by the stove for a considerable time. After school closed Patrick put on his overcoat to start home, and, assuming to claim that by having to stand by the stove he had become very warm and liable to take cold, he put Vanvactor's overcoat on over his own, and started towards his home in a direction different from that in which Vanvactor had to go. Patrick had got several rods away before Vanvactor became aware of what had occurred. He thereupon called to Patrick, and, sending a boy after him, very peremptorily demanded a return of his overcoat, but Patrick refused compliance, and proceeded on his way home with the overcoat. This re-

quired Vanvactor to go home, a distance of about a mile, without an overcoat, when the weather was chilly and cold. On the following Monday, when Patrick returned to school, Vanvactor informed him that he stood temporarily suspended, and told him that he, Vanvactor, would see the township trustee, and the school director, as to the course which ought to be further pursued. During the day Vanvactor saw the township trustee, who advised him that Patrick should be required either to take a whipping or leave the school, and in this view Vanvactor concurred. On the evening of the same day Vanvactor told Patrick what had been resolved upon in regard to his punishment. Patrick very promptly replied that he would not take a whipping. Patrick, nevertheless, returned to school next morning and told Vanvactor that he had consulted the family with whom he lived, and they had advised him to take a whipping and not leave the school, and that he was willing to take a whipping, provided that it should not be inflicted upon him until after the school should be closed in the afternoon, and the other pupils had left the school-house. To this proposition Vanvactor assented. Accordingly, during the day Vanvactor provided a green switch for the occasion, which was about three feet long and forked near the middle, forming two limber prongs composed of twigs. After the school had closed that afternoon, and all others had left, and a few minutes of apparent suspense had intervened, Patrick remarked that it was time for the performance to begin, and assisted in removing a table and in clearing the floor. He then placed himself before, and with his face towards, the blackboard, and indicated that he was ready to proceed. Vanvactor thereupon struck Patrick nine sharp blows on the back part of his legs between his body and the knee-joints. Patrick at the time made no outcry or complaint, and the switch was not broken. Two or three days later Vanvactor was arrested on the charge of having committed an assault and battery upon Patrick, in whipping him as

stated, and taken before a justice of the peace, where he was tried and convicted. Upon an appeal to the circuit court, a jury found him guilty of an assault and battery as charged, and fixed his fine at one cent, upon which judgment was awarded.

A question was reserved below, and is pressed very earnestly here, upon the alleged insufficiency of the evidence to sustain the verdict.

Patrick testified that Vanvactor laid on the blows hard, as if he was angry, and that after he went home and examined his legs he found them beat to a jelly. Upon further examination, however, it was made apparent that he meant only that Vanvactor had inflicted hard blows, and had thereby imprinted marks and abrasions upon his legs which for a time gave him pain and annoyance. Two or three other persons testified to having seen marks and abrasions upon Patrick's legs, but as to the nature and extent of these marks and abrasions their testimony was variant and indefinite.

It was shown, without controversy, that, on the day after the whipping, Patrick came back to school with his skates, and neither made complaint nor manifested any impediment.

Vanvactor testified that he did not hit Patrick what could rightly be called hard blows, but that he intended that the blows he gave should inflict pain; that he was not in the least angry, but was sorry to have to punish Patrick, and did so punish him only under a sense of his duty as a teacher; that Patrick was not an obedient pupil, but had made no serious trouble until the Friday in February hereinabove referred to.

There are, perhaps, some isolated points in the evidence which present some difficulty, but when these are considered in connection with all the other facts and circumstances concerning which there was no controversy at the trial, we are of opinion that the evidence as a whole did not sustain the verdict.

The books commonly assume that a teacher has the same

right to chastise his pupil that a parent has to thus punish his child. But that is only true in a limited sense. The teacher has no general right of chastisement for all offences, as has the parent. The teacher's right in that respect is restricted to the limits of his jurisdiction and responsibility as a teacher. But within those limits a teacher may exact a compliance with all reasonable commands, and may, in a kind and reasonable spirit, inflict corporal punishment upon a pupil for disobedience. This punishment should not be either cruel or excessive, and ought always to be apportioned to the gravity of the offence, and within the bounds of moderation. But, plainly, when complaint is made, the calm and honest judgment of the teacher, as to what the situation required, should have weight, as in the case of a parent under similar circumstances; and where no improper weapon has been employed, the presumption will be, until the contrary is made to appear, that what was done was rightly done. Subject to these general rules, the teacher's right to inflict, and the duty of inflicting, corporal punishment upon a pupil, and the reasonableness of such a punishment when imposed, must be judged of by the varying circumstances of each particular case. 1 Bishop Criminal Law, section 886, and authorities cited; *Danenhoffer* v. *State*, 69 Ind. 295 (35 Am. R. 216).

To support a charge of an assault and battery it is necessary to show that the act complained of was *intentionally* committed. But in the case of the chastisement of a pupil, the *intent* may be inferred from the unreasonableness of the method adopted or the excess of force employed, but the burden of proving such unreasonableness or such excess rests upon the State.

In such a case, in addition to the general presumption of his innocence, the teacher has the presumption of having done his duty in support of his defence. *Commonwealth* v. *Randall*, 4 Gray, 36; *Lander* v. *Seaver*, 32 Vt. 114; *State* v. *Alford*, 68 N. C. 322; *Commonwealth* v. *Seed*, 5 Pa. Law Jour. Rep. 78.

In this case Vanvactor had not only both of these presumptions in his favor, but all the circumstances tended to prove that he acted with much caution, forbearance and deliberation in the character, as well as the extent, of the punishment which he visited upon Patrick.    The switch used was not an inappropriate weapon for a boy of Patrick's age and apparent vigor.    Patrick's offence as a breach of good deportment in a school was one not to be overlooked or treated lightly.    It was calculated, and was most likely intended, to humiliate Vanvactor in the presence of his pupils, and its tendency was to impair his influence in the government of his school.    The motive was apparently revenge for having been required to stand by the stove for a time as a punishment for a previous violation of good order.

When the alternative of leaving the school or taking a whipping was presented to him, Patrick did not object to it, either as unreasonable or unjust.    After consultation and mature deliberation he decided to accept a whipping, on condition that it be administered privately.    In a spirit of evident forbearance, the request thus implied was acceded to. With all these preparations in view, Patrick had no reason to expect that the chastisement would be a merely formal and painless ceremony.    The legitimate object of chastisement is to inflict punishment by the pain which it causes, as well as the degradation which it implies.    It does not, therefore, necessarily follow, because pain was produced, or some abrasion of the skin resulted from a switch, that a chastisement was either cruel or excessive.

When a proper weapon has been used, the character of the chastisement, with reference to any alleged cruelty or excess, must be determined by the nature of the offence, the age, the physical and. mental condition, as well as the personal attributes of the pupil, and the deportment of the teacher, keeping in view the presumptions to which we have alluded.

All the circumstances lead us to the conclusion, that if Vanvactor really gave harder blows than ought to have been

given, the error was one of judgment only, and hence not one of improper or unlawful motive.

The statement of Patrick that Vanvactor laid on the blows hard, " as if he was angry," was, when explained and taken in connection with other evidence as stated, too trivial to materially conflict with the conclusion thus reached.

It must be borne in mind that Patrick was not peremptorily required to submit to corporal punishment, but that he accepted that kind of punishment, with all its unpleasant consequences, in preference to a milder, and latterly a much more usual and more approved, method of enforcing discipline in the schools, when grave offences are committed, and that he made no complaint or protest at the time the blows, since complained of, were given. *Fertich* v. *Michener,* 111 Ind. 472.

The judgment is reversed, and the cause is remanded for a new trial.

Filed Feb. 9, 1888.