INDIANA STATE PERSONNEL BOARD *v.* JACKSON.

[No. 30,329. Filed September 30, 1963.]

*Edwin K. Steers,* Attorney General, *Thomas A. Brown* and *Robert W. McNevin,* Deputy Attorneys General, for appellant.

*Bell & Bell,* of Indianapolis and *Harold E. Ford,* of Madison, for appellee.

LANDIS, J.—This is an appeal from a judgment of the Jennings Circuit Court setting aside the dismissal of appellee by the Indiana State Personnel Board from his employment as an institutional teacher at the Muscatatuck State School.

Appellee as such institutional teacher was a regular employee in classified service under. the State Personnel Act.[1]

It further appears that on or about September 20, 1961, appellee received a letter from Dr. D. H. Jolly, superintendent of the Muscatatuck State School, suspending him from his employment, and on or about October 10, 1961, appellee received a notice and dismissal from his said employment. His dismissal was made upon the following charges:

"1. *Abuse of Patient,* consisting of failure to comply with Chapter 118, Acts of 1955, Section 2 and with Department of Mental Health Official Bulletin Number 14 in that on September 13, 1961, plaintiff did discipline a patient, Sandra Ford, by striking her across the buttocks with a belt.

"2. *Insubordination,* consisting of failure or outright refusal to perform a specifically assigned task of submitting a full written report of a certain incident, which report was requested by Superintendent Jolly in June, 1961, and not done as of September 18, 1961."

Appellee filed request for a hearing before the Indiana Personnel Board resulting in an order sustaining his dismissal.

Appellee petitioned for judicial review under the Administrative Adjudication and Court Review Act,[2] and

---

1. Burns' §§60-1301 to 60-1348 incl. (1961 Repl.), Acts 1941, ch. 139, §§1-48.
2. Burns' §§63-3001 to 63-3030 incl. (1961 Repl.). Acts 1947, ch. 365, §§1-28, as amended.

the court below on July 27, 1962, reversed the decision of the State Personnel Board and ordered that appellee be reinstated as an employee at the Muscatatuck State School without loss of pay from the time of his suspension from employment. Appellant Personnel Board appeals from the judgment.

The Administrative Adjudication and Court Review Act (Burns' §63-3018, 1961 Repl., *supra*) governs the proceedings for judicial review of the board's order by the trial court and provides:

> "On such judicial review such court shall not try or determine said cause de novo, but the facts shall be considered and determined exclusively upon the record filed with said court ...
>
> "On such judicial review if the agency has complied with the procedural requirements of this act, and its finding, decision or determination is supported by substantial, reliable and probative evidence, such agency's finding, decision or determination shall not be set aside or disturbed."

Appellant asserts there is probative evidence in the record to support appellant board's (agency's) findings of facts and determination which so far as pertinent were as follows:

> "1. The Merle Jackson was, during the month of June, 1961, requested to submit a full report to the superintendent concerning the disciplinary action taken by said Merle Jackson with respect to a patient of the Muscatatuck State School, whose name was Teressa Southgate.
>
> "2. That at no time did said Merle Jackson submit a report to the said superintendent as requested.
>
> "3. That on or about September 13, 1961—Merle Jackson did strike a patient at Muscatatuck State School, namely Sandra Ford, across the buttocks in a class room at said institution and again in his office.

"4. That in each instance the said Merle Jackson struck the patient, Sandra Ford, across the buttocks with his belt.

"5. That the said Merle Jackson admitted striking the patient, Sandra Ford, with his belt twice in the class room and again with his belt two or three times in his office.

"The Indiana State Personnel Board concludes that striking a patient of a mental institution in the State of Indiana with a belt was contrary to the policy of the Muscatatuck State School and the law of the State of Indiana. Therefore, the Indiana State Personnel Board enters the following order:

"The dismissal of Merle Jackson from employment at the Muscatatuck State School for insubordination and striking a patient of said Institution is hereby sustained."

Appellant has discussed the board's findings side-by-side with the court's findings and we shall therefore do likewise in this opinion.

Appellant contends however, while the board's findings are supported by probative evidence, that the lower court's findings of facts 7 through 17 are not supported by sufficient evidence and are contrary to law.

Appellant argues at the outset that the court's findings of facts 7, 8 and 9, are clearly beyond the evidence introduced before appellant board and as set forth in the transcript.

These findings were:

"7. That on September 13, 1961, plaintiff did discipline Sandra Ford, a fourteen year old girl in a classroom and in his office, by striking her, in the presence of witnesses, across the buttocks with a belt very lightly and without anger, and only after persuasion and other means had been tried and had failed.

"8. That the spanking by plaintiff of Sandra Ford on September 13, 1961, was in no way abusive but was done in a manner kindly but firm and in a successful attempt to assist the girl in getting control of herself.

"9. That Sandra Ford was not injured or harmed by said spanking but was quieted thereby and exhibited good will and cooperation with her teachers and classmates thereafter and that said spanking of said Sandra Ford was done by plaintiff in her interests."

These findings of the court deal with the same subject matter as findings 3, 4 and 5 of the board. It will be noted, however, that the board's findings are only in substance that on or about September 13, 1961, Merle Jackson, appellee, struck Sandra Ford across the buttocks with his belt twice in the classroom and two or three times in his office. Upon comparison with the lower court's findings, it will be seen that all of the board's findings 3, 4 and 5 have been included in the court's findings 7, 8 and 9, together with other facts.

In support of appellant's argument that the board's findings are proper whereas the court's findings 7, 8 and 9 are improper, appellant relies solely on appellant's exhibits 5 through 10. These exhibits were photographs taken of the fourteen year old girl after the disciplinary action. Appellant contends they show bruises upon her committed with some kind of force greater than expressed in the court's findings which state she was disciplined " . . . by striking . . . in the presence of witnesses, across the buttocks with a belt very lightly and without anger . . . " and that the " . . . spanking . . . was in no way abusive, but was done in a manner kindly but firm and in a successful attempt to assist the girl in getting control of herself."

We are unable to see any conflict between the pictures and the findings of the court in the respect urged.

However, the board's findings did omit and ignore certain uncontradicted and pertinent facts testified to by eye witnesses, which were properly found by the lower court in its findings, viz: that the striking was done without anger and was done lightly (testimony of Mr. White and Mrs. Coryea), that prior to any striking of the girl, the appellee and other school personnel tried persuasion and other means of enabling Sandra Ford to get control of herself, that the spanking of Sandra Ford by appellee did not injure or harm the girl but enabled her to get control of herself and to cooperate with the teachers and her classmates and was in her best interest (testimony of Dr. Sprague, Mr. White, Mrs. Coryea).

It appears further from the uncontradicted evidence that Sandra Ford on the day in question was using in the classroom very abusive language toward her teacher, Mr. White, who was standing over to one side of the room trying to teach the youngsters; that she stated: " . . . We ran away last night and we're going to do it again . . . " (referring to the fact that she had been out all night with some teenagers of both sexes); that when her teacher told her to be quiet because there were other students in the room, the girl said: " . . . I don't have to be still. That's what my mouth is made for, to talk." That Mr. White called appellee, Mr. Jackson, his supervisor to the room and that appellee tried to talk to the girl in a very nice way and told her to get her book and go to work; that appellee tried to help her and she began using abusive language toward him, calling him profane names and throwing her book to the floor. She said to

appellee: " . . . I will go to Miss White, get you fired.
. . . " That appellee then took off his belt and very
lightly spanked her one or two times across the buttocks. She continued using abusive language and Mr.
Jackson took her out of the classroom. She returned
to the classroom in half an hour or forty-five minutes (testimony of Mr. White). There is further uncontradicted testimony by Mr. White that Mr. Jackson did
the only thing he could have done under the circumstances, and at the time he administered the two licks
to Sandra Ford in the classroom, Mr. Jackson did not
appear to be angry. There is further evidence that
Sandra Ford had the intellectual ability to understand
why the punishment was being given (testimony of Dr.
Sprague).

Appellant has stated in its brief that: "For years
the subject of the relationship between teacher and
pubil [sic] has been a matter of public concern. The
question of spanking students has received exhaustive
consideration and, insofar as public schools are concerned, it is still subject to question as to how far a
teacher can go in striking a student. . . . "

Contrary to appellant's contention, the law of Indiana clearly accords to the public school teacher in
proper cases the same right over a child in his
or her school as is possessed by the parent, and
this includes the right to administer corporal
punishment when it is appropriate. The law is well
settled in this state that the teacher stands in loco
parentis to the child, and his authority in this respect
is no more subject to question than is the authority
of the parent. The teacher's authority and the kind
and quantum of punishment employed to meet a given
offense is measured by the same rules, standards and
requirements as fixed and established for parents. See:

*Danenhoffer* v. *State* (1879), 69 Ind. 295; *Vanvactor* v. *State* (1888), 113 Ind. 276, 15 N. E. 341.

It is undisputed that appellee in lightly disciplining the fourteen year old child acted in a kindly manner and without anger, and it is difficult to see how appellee could otherwise have handled the difficult situation with which he was confronted, than he did in this case.

Appellee's petition for judicial review in the lower court asserted the order of the board was arbitrary, capricious, an abuse of discretion, and not in ■ accordance with law for failing to find from the undisputed evidence that appellee disciplined the child as found in findings 3, 4 and 5, only after lengthy counseling, with reluctance and with no anger, and in an extremely light fashion with no ill will. It was therefore proper and necessary for the court below to return findings on said matters within the issues as there was credible evidence on the subject. See: 33 Am. Jur., Trial, §1134, p. 788; 89 C.J.S., Trial, §615(2), p. 433; *Miller, etc.* v. *Ortman, etc. et al.* (1956), 235 Ind. 641, 666, 136 N. E. 2d 17, 32; *Automobile Underwriters* v. *Tite* (1949), 119 Ind. App. 251, 254, 85 N. E. 2d 365, 366.

In our opinion the board's findings 3, 4 and 5 were wholly insufficient in the respects indicated, and the court's findings 7, 8 and 9 were entirely proper as they covered matters within the issues and were amply sustained by the uncontradicted evidence.

Appellant next complains of the court's findings 10 through 14, which were as follows:

"10. That plaintiff had not been ordered or directed by his superiors not to spank students in the school and was with the understanding that such discipline was discretionary with him as principal of the school.

"11. That on September 13, 1961, there were no effective administrative rules or regulations prohibiting discipline by spanking of students at Muscatatuck State School in a manner not rude, insolent or angry.

"12. That Department of Mental Health Official Bulletin Number 14 was not promulgated as an official rule or regulation of the Department of Mental Health, the Indiana Council for Mental Health, Muscatatuck State School or the Superintendent but was the personal definition of a previous Commissioner of the Department of Mental Health which was circulated to a restricted group of department personnel.

"13. That the definition of mistreatment of patients made by an aforesaid Commissioner in 1953 was without relation to actual mistreatment and was so narrow and restrictive as to be physically impossible of compliance therewith by the plaintiff and other employees in charge of mental patients and students.

"14. That on September 13, 1961, there was no definite program nor policy in effect at Muscatatuck State School, concerning discipline of the students and patients."

In appellant's argument it is stated:

"There is no question that there is conflicting evidence relative to whether or not the appellee had direct knowledge of the *rules* of the institution concerning the striking of patients. . . . ". (Italics ours.)

Contrary to appellant's argument there is not a scintilla of evidence that State's exhibit No. 4 which was described as Department of Mental Health Official Bulletin No. 14 (and is the only such item mentioned in the findings) was ever promulgated as an official rule or regulation by the Muscatatuck State School or the Department of Mental Health. In fact appellant subsequently admits in its brief " . . . that

Bulletin No. 14 was not promulgated in accordance with the provisions of the Acts of 1945, ch. 120, §1 *et seq.*, as found in Burns' (1961 Repl.), §60-1501, *et seq.*, and therefore do [sic] not carry the weight of law. . . . "

It is difficult to see how appellant can make a plausible argument that there was evidence, conflicting or otherwise, that appellee had direct knowledge of the *rules* of the institution concerning the striking of patients when appellant admits that no such rules existed in legal contemplation.

Appellant further argues with reference to findings 10 through 14 that appellee was charged by law with knowledge of Burns' §22-4237 (1961 Supp.), (Acts 1955, ch. 118, §2, p. 240) providing as follows:

> "Any person who shall abuse, maltreat, or neglect any mentally ill person who is under the care of a psychiatric hospital shall be guilty of a misdemeanor and upon conviction, shall be fined not less than fifty dollars [$50.00] nor more than one thousand dollars [$1,000], or imprisoned not exceeding six [6] months, or both.
>
> "Abuse and maltreatment shall include but not be limited to any rude, insolent or angry touching of a patient."

The findings to which appellant directs such argument make no reference to this statute and we are unable to see how the statute is applicable to the facts of this case.

If the statute is examined it will be found that it does not attempt to forbid all touching or striking. It prohibits the " . . . rude, insolent or angry touching of a patient" and provides that the same shall constitute abuse and maltreatment of a patient. Similarly, the general statutes on assault

and battery[3] and assault,[4] while they cover a somewhat different subject matter, do not attempt to prohibit all touching or striking but only when done in a rude, insolent or angry manner or by one attempting to commit a violent injury on another.

There is also uncontradicted evidence in the record that statements were made by Dr. Jolly, the superintendent of the Muscatatuck State School, to the staff that if an employee should be involved in a situation where discipline of a patient was necessary, that the employee should take whatever action was appropriate and that Dr. Jolly would back him up (testimony of William Kelly, co-director of Psychology Department of said school).

The previous discussion of the uncontradicted evidence upon the subject of the kindly manner without anger in which Sandra Ford was disciplined by spanking after persuasion and other means had failed, amply demonstrates that the lower court's findings here attacked by appellant were proper and supported by substantial evidence. Appellant does not argue that the board's findings heretofore set out were sufficient as to the matters covered by the court's findings here, in question, but on the contrary their insufficiency under the uncontradicted facts is clear.

Appellant next argues with reference to findings 15, 16 and 17 of the court that contrary to such findings appellee was insubordinate and did not follow the order of the superintendent on a matter of utmost importance. The court's findings 15, 16 and 17 were as follows:

3. Burns' §10-403 (1963 Supp.), Acts 1905, ch. 169, §354, p. 584; 1951, ch. 277, §1, p. 285; 1961, ch. 321, §1, p. 951.
4. Burns' §10-402 (1956 Repl.), Acts 1941, ch. 148, §7, p. 447.

"15. That in June, 1961, plaintiff was requested by the Superintendent at Muscatatuck State School to submit to him a full report in regard to a specific matter. Said report was not submitted as requested. Plaintiff filed the information and made such reports in regard to such matter as he customarily made concerning such matters and put them in the cumulative records of the school's Special Education Department. Plaintiff's actions in filing the report rather than submitting it to the Superintendent was due to plaintiff's misunderstanding of the request made to him.

"16. That in the matter wherein plaintiff failed to make the report requested of him, plaintiff freely and promptly made oral reports and fully disclosed all facts and information to his immediate superior employee and to the Superintendent.

"17. That plaintiff's failure to submit the written report requested of him was not done willfully nor intentionally and there is no evidence of nor finding of the Indiana Personnel Board of any refusal to obey or of any other disobedience of any order or directive issued to plaintiff by his superiors."

The evidence upon this matter relied on by appellant is the following testimony of appellee:

"A. He[referring to the superintendent]—only thing he stated, was to 'Write yourself up, so I can read it in Court, when Mr. Derringer's case comes up.' "

. . . . .

"Q. Mr. Jackson, I believe you've testified that Dr. Jolly said, 'Write yourself up'—
"A. Yes, sir.
"Q. And went on to say he needed to use it in Court, in the Derringer case.
"A. Yes, sir.

. . . . .

"Q. Now, how would you have interpreted Dr. Jolly had he said, 'Make a report of the incident'?

"A. I would have reported it.

"Q. And what would you have done in that case?

"A. I would have written—written a report and submitted to Dr. Jolly."

The trial court in its special findings found, in substance, that appellee although he did not submit a report to the superintendent as requested, did, because of a misunderstanding, file the information and make such report as he customarily made concerning such matters and put the same in the records of the school's special education department; that appellee made oral reports concerning all the facts to the superintendent and that appellee did not wilfully or intentionally disobey any order of his superiors.

There is no evidence in the record that the expression used by the superintendent directed to appellee "to write himself up" meant to submit a written report to the superintendent rather than to file a report in the records of the school's education department as appellee did in this case.

Nor is there evidence in the record to dispute the testimony that the failure of appellee to report in writing to the superintendent was due to a misunderstanding, and was not intentional or wilful, and we believe therefore that the special findings of the court below were the only reasonable conclusion that could have been reached on such evidence. The board's findings heretofore appearing in this opinion were insufficient for failing to find facts pertinent to the issues involved as disclosed by the uncontradicted evidence.

Appellant's remaining contentions pertain to its assertions that the trial court erred in certain of its conclusions of law.

Conclusion of law No. 2 was to the effect that the order of the board sustaining the dismissal of appellee was arbitrary, capricious, and not in accordance with law.

We have heretofore in this opinion indicated in what respects the board's findings of fact were insufficient under the facts and issues in this case and that the court's findings were sufficient and proper as against the contentions of appellant to the contrary.

In view of the fact that under this opinion the lower court's findings stand and the board's findings do not, and as the court's findings furnish no basis for the board's order sustaining appellee's dismissal, it follows that we must conclude the court did not err in its conclusion of law No. 2 that the board's order sustaining the dismissal of appellee was arbitrary, capricious, and not in accordance with law. See: *Securities Comm. of Ind. etc.* v. *Holovachka* (1955), 234 Ind. 135, 124 N. E. 2d 380; *Pub. Serv. Comm.* v. *Ft. Wayne U. Ry. Co.* (1953), 232 Ind. 82, 111 N. E. 2d 719; *Wabash Valley Coach Co.* v. *Arrow Coach Lines* (1950), 228 Ind. 609, 94 N. E. 2d 753.

The foregoing discussion similarly discloses that the court did not err in its conclusions of law 5, 8, 10 and 13.

As it is apparent from the foregoing opinion that the lower court's determination that the decision of the Indiana Personnel Board was arbitrary, capricious, and not in accordance with law was correct, it necessarily follows that the judgment of the trial court vacating the board's decision and reinstating appellee must be affirmed.

In view of the result we have reached it is not necessary to discuss the remaining contentions of appellant on this appeal.

Judgment affirmed.

Myers, C. J., and Achor and Arterburn, JJ., concur; Jackson, J., concurs in result.

Arterburn, J., concurs with separate opinion.

## CONCURRING OPINION

ARTERBURN, J.—I fully concur in Judge Landis' opinion and particularly wish to emphasize the point that a teacher stands in the same relationship as a parent during the time a child is in the custody of a teacher. A teacher, and a parent, have not only the right but the obligation to discipline a child, if necessary using corporal punishment, for the good of such child, as well as the protection of third parties offended or injured by the actions of such child. The failure to exercise such disciplinary action where the occasion requires it, is condemned by the law as much as an excessive and cruel punishment beyond requirements.

In this case the teacher was confronted with an arrogant and impudent child interrupting classroom exercises by violent and abusive remarks towards the teacher. The medical testimony was uncontradicted that this pupil had the mentality to know and understand her wrong-doing and to control it. The teacher had the duty of protecting the interests of the remaining members of the class from interruption and at the same time maintain order and a respect for authority among the children. A teacher has no choice in an orderly society but to exercise physical force in stopping and removing the recalcitrant pupil and inflicting corporal punishment, not only to the offending child

for its benefit, but as an example to the other pupils. Such matters may not be delayed until there is time to talk and "reason" with the pupil. Consideration has to be given to the remaining pupils in the class where the incident occurred.

I might further add that I have serious doubts that a teacher confronted with such a situation and responsibility under the law for maintaining order and a respect for authority before a classroom of pupils, can be deprived by a "rule" of the right to use physical force to eliminate such a disturbance. As long as teachers or parents are obligated under the law to educate, teach and train children, they may not be denied the necessary means of carrying out their responsibility as such teachers or parents.

NOTE.—Reported in 192 N. E. 2d 740.