**Christopher Bruce COLE, by Larry COLE, His Next Best Friend, Plaintiff,**

v.

**GREENFIELD–CENTRAL COMMUNITY SCHOOLS, et al., Defendants.**

**No. IP 83–681–C.**

United States District Court, S.D. Indiana, Indianapolis Division.

Dec. 5, 1986.

Thomas E.Q. Williams, Greenfield, for plaintiff.

Forrest B. Bowman, Jr., Bowman, Tucker & Emery, Indianapolis, for defendants.

## MEMORANDUM OF DECISION

NOLAND, District Judge.

### I. INTRODUCTION

#### A. *Procedural History.*

This cause came before the Court initially upon the cross motions for summary judgment filed by both parties. On October 28, 1986, this Court issued a written entry which denied the plaintiff's motion for summary judgment, as well as granting in part and denying in part the defendants' motion for summary judgment. As a result, the only issue remaining for trial was whether the defendant school officials had violated the plaintiff's civil rights in disciplining him. 42 U.S.C. § 1983 (1982). The Court ordered that this remaining issue be bifurcated for trial, and further ordered that the question involving the reasonableness of the punishment be tried first pursuant to Rule 42(b). Fed.R.Civ.P. 42(b); *see Stewart v. RCA*, 790 F.2d 624, 629 (7th Cir.1986). Pursuant to that order a bench trial was conducted on November 6, 1986, in which the Court received evidence re-

garding the circumstances surrounding the punishment. The evidence consisted of the sworn testimony of witnesses, various exhibits and the deposition of Mrs. Maxwell. Although Mrs. Maxwell was present in the Court, her deposition was submitted to the Court in lieu of her oral testimony. There being no objection to the offer, this Court admitted the deposition into evidence. This Court now enters final judgment in this matter.

## B. *Factual Background*

The plaintiff in this case, Christopher Bruce Cole, was a child-student in the Greenfield-Central Community School system at all times pertinent to this action. The plaintiff was diagnosed as being hyperactive and being otherwise so emotionally disturbed as to constitute an emotional handicap. The plaintiff had particular problems adjusting to the scholastic setting in that he had a difficult time harmonizing with the other children and his behavior was troublesome to manage. In an apparent effort to discipline him, officials in the Greenfield-Central Community school system employed a number of techniques which included the following:

1. Paddling;
2. Seating the plaintiff at an isolated desk in the classroom or an isolated table in the cafeteria;
3. Refusing to allow the plaintiff to accompany the class on a field trip; and
4. Taping the mouth of the plaintiff shut during class.

In addition, the plaintiff charges that on one occasion he accidentally jabbed himself with the leaded end of a pencil, and that his request to visit the office for medical treatment was denied wrongfully by his teacher, Mrs. Maxwell. At all times relevant to this case, Mrs. Maxwell was the plaintiff's teacher and Mr. John was the principal of the plaintiff's school. All of the disciplining in this case was administered by either Mrs. Maxwell or Mr. John.

Having carefully reviewed all of the evidence, this Court concludes that the plaintiff was a substantial behavioral problem both in the school and in the classroom.

The plaintiff engaged in the following disruptive activities while on school property: climbing on the furniture; talking back to his teacher; distracting the other students; poking other students; kicking other students; spitting upon other students; leaving his seat without permission; making belching noises; speaking at improper times; forging his father's signature on a note sent to his home; sticking his tongue out and making faces to the other students; attacking other children with sufficient force to knock them off of their feet; moving furniture in the classroom; intentionally running into other children; eating meals without employing his utensils; and licking the food off of his tray in the lunchroom.

Mrs. Maxwell stated that the plaintiff was the most troublesome and disruptive student that she has ever encountered in her eight years of teaching. Mr. John testified that the plaintiff was one of the two most difficult behavioral problems that he has ever encountered in twenty years as a principal. Mr. John also testified that every positive and negative behavioral modification technique was employed to correct the plaintiff's conduct. The behavior of the plaintiff caused the school system and bus company to alter the bus route in order to minimize the duration of the other children's exposure to the plaintiff while riding the bus. Mr. John and Mrs. Maxwell employed numerous disciplinary techniques to correct the plaintiff's behavior without success.

## II. DISCUSSION

The only issue that remains unresolved is whether the aforementioned discipline techniques violated the plaintiff's constitutional right to due process and equal protection of the laws. Initially, it is important to note that "[h]andicapped children are neither immune from a school's process nor are they entitled to participate in programs when their behavior impairs the education of other children in the program." *Stuart v. Nappi*, 443 F.Supp. 1235, 1243 (D.Conn.1978). As a result, the plaintiff is not entitled to any unique ex-

emptions or protections from a school's normal disciplinary procedures regarding corporal punishment because of his handicap. *See Kaelin v. Grubbs,* 682 F.2d 595, 602 (6th Cir.1982); *Doe v. Koger,* 480 F.Supp. 225, 230 (N.D.Ind.1979).

Moreover, in order to establish liability against each of the various defendants, the plaintiff must make a greater showing than that required in a normal tort case because the defendants all enjoy a certain immunity from section 1983 liability.

*Greenfield-Central School System:* Although the parties have not briefed the issue, it is possible that Greenfield-Central constitutes an "alter ego" of the state of Indiana and is therefore entitled to immunity from suit pursuant to the Eleventh Amendment. *Unified School District No. 480 v. Epperson,* 583 F.2d 1118 (10th Cir. 1978). Assuming, *arguendo,* that it is not, then it does constitute a municipality pursuant to *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In that case, Greenfield-Central is liable to the plaintiff if its alleged unconstitutional action was the execution of a "policy statement, ordinance, regulation or decision officially adopted and promulgated" by the ruling body. 436 U.S. 690, 98 S.Ct. 2036.

■ *School Board, Mr. John (principal), and Mrs. Maxwell, (teacher):* It is quite well-settled that all of these defendants are entitled to qualified immunity from a Section 1983 suit. *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975) (school board and school administrators); *Doe v. Renfrow,* 631 F.2d 91 (7th Cir.1980), *cert. denied,* 451 U.S. 1022, 101 S.Ct. 3015, 69 L.Ed.2d 395 (1981) (school principal); *Flores v. Edinburg Consolidated Independent School District,* 554 F.Supp. 974 (S.D.Tex.1983), *rev'd on other grounds,* 741 F.2d 773 (5th Cir.1984) (school teacher). In order for the plaintiff to establish that these defendants acted beyond the bounds of this privilege, he must show that the particular defendant(s) should reasonably have known that their conduct was in violation of the plaintiff's clearly established constitutional rights.

*Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The plaintiff must also show that each defendant had some level of personal responsibility. *Rascon v. Hardiman,* 803 F.2d 269, 273–74 (7th Cir.1986).

In addition, the Supreme Court has carefully delineated the role of the federal courts when reviewing section 1983 challenges to school discipline:

> It is not the role of the federal courts to set aside decisions of school administrators which the court may view as lacking a basis in wisdom or compassion.... The system of public education that has evolved in this Nation relies necessarily upon the discretion and judgment of school administrators and school board members and § 1983 was not intended to be a vehicle for federal court correction of errors in the exercise of that discretion which do not rise to the level of violations of specific constitutional guarantees.

*Wood v. Strickland,* 420 U.S. 308, 326, 95 S.Ct. 992, 1003, 43 L.Ed.2d 214 (1975) (citations omitted).

## A. *Due Process*

■ It is clear that the state of Indiana has authorized the use of moderate corporal punishment. Ind.Code § 20–8.1–5–2 (1975). The United States Supreme Court has also made its position on corporal punishment and the Due Process Clause quite clear. "We conclude that the Due Process Clause does not require notice and a hearing prior to the imposition of corporal punishment in the public schools, as that practice is authorized and limited by the common law." *Ingraham v. Wright,* 430 U.S. 651, 682, 97 S.Ct. 1401, 1418, 51 L.Ed.2d 711 (1977); *see also Brooks v. School Board of City of Richmond,* 569 F.Supp. 1534 (E.D.Va.1983). Thus, "as long as disciplinary corporal punishment is within the limits of the common law privilege," its use does not constitute a violation of Due Process. *Id.,* 430 U.S. at 676, 97 S.Ct. at 1415.

In order to determine whether certain corporal punishment falls within the common law privilege defined by Indiana law,

it is necessary to analyze the following four elements:

> (1) The teacher must have the general authority to inflict corporal punishment on the pupil; (2) the rule violated must be within the scope of the educational function; (3) the violator of the rule must be the one punished; and (4) the punishment inflicted must be in proportion to the gravity of the offense.

*The Teacher Privilege to Use Corporal Punishment,* 11 Ind.L.Rev. 349, 352 (1978) (and cases cited therein).

With regard to the first element, it was noted above that Indiana common and statutory law grants school officials the general authority to impose corporal punishment upon students within their ward. Ind.Code § 20–8.1–5–2 (1975); *Indiana State Personnel Board v. Jackson,* 244 Ind. 321, 328, 192 N.E.2d 740, 743–44 (1963); *Vanvactor v. State,* 113 Ind. 276, 15 N.E. 341 (1887). The other elements, however, hinge upon the circumstances surrounding the punishment and are thus fact-specific.

With regard to whether the rule violated by the student furthered the educational function, this Court has carefully reviewed all of the evidence in this case and concludes that rules breached by the plaintiff did further the educational function. It cannot reasonably be disputed that the need to maintain order in the classroom and the need to protect the safety of the children are essential to the educational function. It is clear that in disciplining the plaintiff, the defendants sought to limit the amount of disruption emanating from the plaintiff as well as to ensure both the protection and orderly education of the other students. As a result, the rules underlying the disciplinary enforcement clearly served an educational function.

In addition, based upon the evidence presented to the Court, there is no serious contest that each incident of discipline was preceded by some type of misconduct on behalf of the plaintiff. Thus, element three is established. The single issue remaining therefore, is whether the punishment inflicted upon the plaintiff was proportionate to the offense committed.

Reviewing the five instances emphasized by the plaintiff, this Court finds, as a factual matter, that two of the instances did not constitute punishment. In the first instance, the plaintiff alleges that he was prohibited from attending a class field trip. At trial, it was established that the plaintiff had attended two of the three field trips and could have attended the third field trip on the condition that he be accompanied by an adult who could monitor his behavior (this rule was imposed because of the plaintiff's behavior during previous field trips). Other adults served as chaperones during the field trips, and the plaintiff's grandmother offered to attend as the plaintiff's custodian. The plaintiff voluntarily elected not to attend the field trip on these conditions. Because the restrictions placed upon the plaintiff were limited, and the plaintiff voluntarily elected to forego the field trip, the conduct of the defendants did not constitute punishment.

The second instance involves the pencil lead accident. On that occasion, the plaintiff accidentally injured his hand by poking it with a pencil. Upon examining the injury, Mrs. Maxwell concluded that immediate medical attention was unnecessary and therefore denied the plaintiff's request to visit the office. Notwithstanding a small scar, the plaintiff suffered no other adverse effects from the incident. There is nothing to indicate that Mrs. Maxwell had punitive designs when she denied the plaintiff's request by telling the plaintiff that he would "be fine." The federal courts are not a vehicle to examine such insignificant exercises of discretion by elementary school teachers. The Court will address the remaining three punishments, paddling, isolation seating in the classroom/cafeteria, and mouth taping.

■ 1. *Paddling:* It was established that the plaintiff was paddled on one occasion by Mr. John. Mr. John testified that paddling was not the preferred method of disciplining, but that it was used only as a last resort. Mr. John discussed the prospect of paddling with the plaintiff's father and the plaintiff's father stated that it merited consideration. As a result, when Mr.

John apprehended the plaintiff while in the act of running over some smaller children, Mr. John told the plaintiff that should this conduct persist, he would be paddled. On the very next day, Mr. John observed the plaintiff running over other students in the same fashion. Mr. John then paddled the plaintiff on the buttocks (in the presence of a witness), striking him three times with a paddle (24″ long and ⅜″ thick) thereby inducing a temporary sting. Under these circumstances, the punishment was clearly not excessive given the plaintiff's precipitating conduct and thus was well within Mr. John's common law privilege.

■ 2. *Isolation Seating:* Mrs. Maxwell testified that the plaintiff had the ability to control his behavior when it was in his best interests. *Deposition, Mary Ann Maxwell,* Mar. 1, 1985, pp. 11, 39–40. For this reason, she pursued innumerable techniques to modify his normally disruptive behavior. One technique commonly employed by herself and the school was to seat the malefactor in an isolated area of the classroom or cafeteria. Isolation seating involves placing a pupil in a seat and leaving all of the seats adjacent to the pupil—or the lunch table of the pupil—vacant.

Mrs. Maxwell testified that the plaintiff disrupted her class almost every day. *Id.* at p. 10. Bruce's disruptive behavior included physically abusing the other students, spitting upon the other students, talking out of turn, climbing on the furniture, making disruptive noises and improperly eating his food. Having reviewed all of the evidence, this Court concludes that isolation seating is a relatively innocuous disciplining technique and that such punishment was warranted given the plaintiff's behavior. In addition, the Court notes that on at least one occasion, Mrs. Maxwell justified the isolation as a means to protect the other children. Bruce Cole, *Trial Transcript,* Direct Examination at p. 14.

■ 3. *Taping:* Although it is not disputed that on certain occasions Mrs. Maxwell caused the plaintiff to place a one inch strip of masking tape vertically upon his lips, there is a conflict as to the number of instances and the duration of the placement.[1] The evidence at trial established that neither Mr. John nor any other school official authorized or was aware of the taping. Thus, because of their qualified immunity neither Mr. John nor the Greenfield Central Community School System may be held liable pursuant to section 1983 for the incidents. *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (official policy); *Rascon v. Hardiman,* 803 F.2d 269, 273–74 (7th Cir.1986) (local supervisory officials not liable on a *respondeat superior* theory).

---

1. The plaintiff contends that he was taped on four to five occasions. Bruce Cole, *Trial Transcript,* Direct Examination at 11. Mrs. Maxwell, on the other hand, contends that the taping occurred on only two occasions. *Deposition,* Mary Ann Maxwell, Mar. 1, 1985, at 14–17. At the trial, the Court had an opportunity to observe the demeanor of the plaintiff. Many of the plaintiff's statements were inherently inconsistent with his own previous statements on the stand, his deposition, or his pretrial affidavits. In addition, the plaintiff exhibited an evasive tendency and an inability to remember the circumstances surrounding selective, essential events. As a result, the plaintiff's credibility was brought into question.

The affidavits prepared in the office of plaintiff's counsel to support the complaint and in opposition to the motion for summary judgment are particularly suspect. In his initial affidavit, the plaintiff indicates that gray duct tape was used to seal his mouth. *Exhibit C to Plaintiff's Complaint,* Bruce Cole, May 9, 1983 at ¶ 9.

Upon cross-examination at trial, it was established that simple masking tape had been used, and that the source of the "gray tape accusation" was without foundation. Bruce Cole, *Trial Transcript,* Cross-Examination at 29–36. Moreover, in paragraph 9 of the plaintiff's May 9, 1983 affidavit and in paragraphs 2, 3, 4 and 7 of part II of the *Affidavit of Bruce Cole in Support of Summary Judgment and in Opposition to Summary Judgment of the Defendant,* Dec. 28, 1985, the plaintiff stated that he never disrupted Mrs. Maxwell's class and that he had no idea why he was punished. The assertions were completely discredited at the trial, even by the plaintiff's own testimony.

Because of the multiple inconsistencies and contradictions in the various statements of the plaintiff, the Court is hesitant to place excessive reliance upon his testimony. Rather, the Court finds the testimony of Mary Ann Maxwell the more credible and will thus rely on it when a contradiction arises.

Mrs. Maxwell testified that the taping technique was used on two occasions. The plaintiff admitted that Mrs. Maxwell never placed the strip of masking tape (the tape was placed on the plaintiff's lips vertically rather than horizontally) on the plaintiff's mouth herself, but instead instructed the plaintiff to put it there himself. Bruce Cole, *Trial Transcript*, Cross-Examination at p. 33. Moreover the plaintiff testified that he would remove the tape himself, rub his lips and then replace the tape. *Id.* Direct Examination at 6. Mrs. Maxwell testified that on the first occasion, she instructed Bruce to be quiet several times after his noises had rendered her unable to continue. When Bruce failed to respond, she offered him a piece of tape "to remind him to be quiet." Deposition, *Mary Ann Maxwell*, Mar. 1, 1985 at 15. Bruce placed the tape upon his lips, but then immediately removed it and placed it above his lip while smiling; the plaintiff did, however, become quiet. *Id.*

Similar circumstances surrounded the second instance. The plaintiff had sabotaged the classroom environment, Mrs. Maxwell threatened him with a piece of tape, the plaintiff failed to cooperate and she then gave him the tape. *Id.* at 16. The plaintiff then threw the tape onto the floor, Mrs. Maxwell instructed him to place it upon his lips, he promptly removed it, hung it from his upper lip, and threw it away shortly thereafter. *Id.* Mrs. Maxwell testified that she elected to employ the tape rather than expel the plaintiff because taping was less severe and it was consistent with her overall goal of keeping the plain-

tiff in the mainstream of the educational experience. *Id.* at 16 and 43.

Having reviewed all of the evidence, this Court finds as a factual matter, that the taping incidents were symbolic, demonstrative disciplinary techniques (rather than a punitive, physically painful technique) designed to remind the plaintiff to remain silent, similar to placing one's fingers to his lips. Furthermore, because the plaintiff placed the tape on himself and removed it at will, the method resulted in minimal physical discomfort.[2] In addition, it was established that the plaintiff was a prodigiously problematic pupil who wreaked havoc throughout the school. Innumerable techniques were employed to modify his behavior but to no avail. Mrs. Maxwell's patience and her desire to keep the plaintiff in the mainstream educational experience were laudable under the circumstances. She had a duty not only to the plaintiff but to all of the pupils in her classroom to provide them an adequate educational experience. As a result, her initiation of the taping incidents, though not exemplary, did not exceed the bounds of her common law privilege to discipline her pupils.[3] As a result, the plaintiff's section 1983 claim, if it is to succeed at all, must do so on Equal Protection grounds.

### B. *Equal Protection*

■ The plaintiff claims that he is a member of a class, the handicapped, that has been subject to discrimination in the Greenfield-Central Community School System because of their handicapped status; the discrimination being the method by

---

2. The plaintiff testified that the taping caused a red rawness in the area of his mouth. Other evidence, however, indicated that the plaintiff had a habit of licking his lips and suffering chafed lips as a result. This Court concludes that the two limited taping instances were not the source of the alleged redness.

3. Counsel for the plaintiff called a child psychologist to testify as to the propriety of the punishment. The question of which disciplinary treatment is in vogue with the reigning psychological schools is distinct from the question of what corporal punishment is constitutionally permissible. It is the latter rather than the former question which this Court is called to decide.

The psychologist generally condemned all corporal punishment and he focused on the mouth taping, the most egregious of the disciplining techniques. Although he condemned the taping, he was unable to categorize the taping as punitive (physical discomfort) or symbolic (demonstrative example). Elementary school teachers are not expected to be clinical psychologists. Mrs. Maxwell exhausted all potential methods for rectifying the plaintiff's behavior. The taping of the plaintiff's mouth as a last resort did not violate the plaintiff's clearly established constitutional rights and was well within Mrs. Maxwell's common law privilege under these circumstances.

which the students are disciplined. The plaintiff contends that this discriminatory disciplining violates his right to equal protection of the law. The plaintiff, however, has not established that he is a member of a suspect class, or that any of the interests involved were fundamental pursuant to Equal Protection clause analysis. *See Ingraham; San Antonio School District v. Rodriquez,* 411 U.S. 1, 35, 93 S.Ct. 1278, 1297, 36 L.Ed.2d 16 (1973) (right to education is not a fundamental right). As a result, the defendants need only show that there was a rational basis for their conduct in order to defeat the plaintiff's claim.

The discussion in Section II–A of this opinion demonstrates that there was a rational basis for all of the defendants' conduct in this case. The testimony established that the plaintiff received the same punishment that any other child who engaged in such conduct would receive. This case serves to reinforce and demonstrate the importance of the Supreme Court's position in *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). A teacher and a principal are entitled to substantial discretion in handling the day-to-day crises that arise in the schools. The federal courts were not designed to enmesh themselves in an elementary school's disciplinary decision, especially when the school officials have painstakingly striven to accommodate the behavior of a particularly difficult child. An elementary school cannot be subjugated by the tyrannical behavior of a nine-year-old child.

### III. CONCLUSION

For the reasons stated above, judgment is entered in favor of the defendants and against the plaintiff Christopher Bruce Cole.

### JUDGMENT

This cause came before the Court for trial without a jury on November 6, 1986, during which testimony was given and evidence presented.

The Court, having examined the evidence and being duly advised in the premises, hereby finds in favor of the defendants, Greenfield Central Community Schools, Robert D. Erwin, Richard L. Elsbury, John D. Whisler, J.B. Stephens and Jack W. McQueeney, its Board of Directors, and Mr. Phillip G. John, school principal, and Mrs. Mary Ann Maxwell, school teacher. In accordance with its Memorandum of Decision, the Court now ENTERS JUDGMENT for the defendants.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that plaintiff taken nothing by way of his complaint, and that JUDGMENT BE ENTERED in favor of the defendants; with costs to be borne accordingly.