The Estate has not demonstrated that the County owed Thornton a duty of care under either *Mullin* or *Henshilwood.* Accordingly, the trial court's entry of summary judgment in favor of the County was appropriate.

Affirmed.

ROBERTSON and BAKER, JJ., concur.

STATE of Indiana, Appellant–Plaintiff,

v.

D.M.Z., Appellee–Defendant.

No. 73A01–9603–CR–87.

Court of Appeals of Indiana.

Dec. 16, 1996.

Transfer Denied Feb. 19, 1997.

Pamela Carter, Attorney General, Andrew L. Hedges, Deputy Attorney General, Indianapolis, for Appellant.

Ronald J. Waicukauski, Paul T. Fulkerson, White & Raub, Indianapolis, for Appellee.

## STATEMENT OF THE CASE

NAJAM, Judge

The State appeals from the trial court's grant of D.M.Z.'s motion to dismiss. Pursu-

ant to Indiana's Child Seduction Statute, Indiana Code § 35–42–4–7, D.M.Z. was charged by Information with three counts of seducing a 16–year–old male. In its order, the court determined that the statute did not apply because D.M.Z. was not a "custodian" and the Shelby County Youth Shelter ("Shelter") was not a "foster care facility" within the meaning of the statute.

We affirm.

## ISSUE

The State presents several issues for our review; however, we address only one dispositive issue: whether D.M.Z. was a "custodian" under Indiana Code § 35–42–4–7.[1]

## FACTS

In the Fall of 1994, 24–year old D.M.Z. was employed at the Shelter as a child-care worker. During that time, C. P., a sixteen-year-old child, was a resident of the Shelter. On February 22, 1995, the State filed an information which alleged that on three separate occasions, D.M.Z. had engaged in sexual conduct with C.P. in violation of the child seduction statute. On September 26, 1995, D.M.Z. moved to dismiss the charges on several grounds: (1) D.M.Z. was not C.P.'s custodian, (2) the Shelter was not a foster care facility, and (3) the child seduction statute was unconstitutionally vague. Following a hearing, the trial court granted D.M.Z.'s motion to dismiss. The detailed order issued by the court concluded that as a matter of law, D.M.Z. was not C.P.'s custodian and that the Shelter was not a foster care facility. The State appeals from that decision.

## DISCUSSION AND DECISION

■ The State contends that the trial court erred when it granted D.M.Z.'s motion to dismiss. Specifically, the State first asserts that because the information alleged that D.M.Z. was C.P.'s custodian, the court was required to treat that allegation as fact in ruling on the motion. We disagree.

■ Indiana Code § 35–34–1–4 provides for the dismissal of an information on "any other ground that is a basis for dismissal as a matter of law." IND. CODE § 35–34–1–4(a)(11). Generally, as the State points out, when a defendant files a motion to dismiss an information the facts alleged in the information are to be taken as true. *State v. Gillespie,* 428 N.E.2d 1338, 1339 (Ind.Ct.App.1981). However, we cannot agree with the State that the mere assertion that D.M.Z. was C.P.'s custodian is sufficient to preclude dismissal. *See State v. Fields,* 527 N.E.2d 218 (Ind.Ct.App.1988) (State could not rely on "bare allegation" of materiality and dismissal was appropriate). A trial court considering a motion to dismiss in a criminal case need not rely entirely on the text of the charging information but can hear and consider evidence in determining whether or not a defendant can be charged with the crime alleged. *See* IND. CODE § 35–34–1–8. It is one function of a prosecuting attorney to make certain that a person is not erroneously charged. *Gillespie,* 428 N.E.2d at 1339. In considering a motion to dismiss, the trial court has that same obligation.

■ The interpretation of a statute is not a question of fact but one of law reserved for the trial court. *Robinson v. Zeedyk,* 625 N.E.2d 1249, 1251 (Ind.Ct.App.1993), *trans. denied.* Here, the court accepted all the material facts in the information as true but concluded that they did not establish, as a matter of law, that D.M.Z. was a "custodian" within the meaning of the child seduction statute. Thus, the court did not err when it declined to accept at face value the State's allegation that D.M.Z. was C.P.'s custodian.

■ The State next argues that the evidence establishes that D.M.Z. was C.P.'s custodian. The interpretation and application of the term "custodian" within the child seduction statute is an issue of first impression. The statute provides:

(a) As used in this section, "adoptive parent" has the meaning set forth in IC 31–3–4–3.

---

1. Because of our determination that D.M.Z. is not a custodian, we need not consider the State's argument that the trial court erred when it concluded that the Shelby County Youth Shelter was not a foster care facility.

(b) As used in this section, "adoptive grandparent" means the parent of an adoptive parent.

(c) As used in this section, *"custodian" includes any person responsible for a child's welfare who is employed by a public or private residential school or foster care facility.*

(d) As used in this section, "stepparent" means an individual who is married to a child's custodial or noncustodial parent and is not the child's adoptive parent.

(e) If a person who is:

(1) at least eighteen (18) years of age; and

*(2) the guardian, adoptive parent, adoptive grandparent, custodian, or stepparent of a child at least sixteen (16) years of age but less than eighteen (18) years of age;* engages in sexual intercourse or deviate sexual conduct with the child, the person commits child seduction, a Class D felony.

IND. CODE § 35–42–4–7 (emphasis added).

 Only when a statute is ambiguous is it susceptible to judicial interpretation. *Sullivan v. Day,* 661 N.E.2d 848, 853 (Ind.Ct. App.1996). Here, the statute defines "custodian" as a "person responsible for a child's welfare." When the legislature defines a word, the courts are bound by that definition. *Tillman v. Snow,* 571 N.E.2d 578, 580 (Ind. Ct.App.1991). However, the statute may still be ambiguous where the wording of the statute arguably supports either of the competing interpretations advocated by the parties. *Sullivan,* 661 N.E.2d at 853.

The State contends that as a child-care worker, D.M.Z. is a "custodian" as defined by the child seduction statute. D.M.Z. counters that the trial court correctly held that a custodian is a person in a position of authority similar to that of an adoptive parent, adoptive grandparent, guardian or stepparent. Record at 125. Liberally construed, the term "custodian" could encompass virtually anyone responsible for the supervision of a child. However, it is not clear that the legislature intended the phrase "responsible for a child's welfare" to include such a broad spectrum of individuals.

 As this is a penal statute, the term is to be strictly construed against the State.

*Spangler v. State,* 607 N.E.2d 720, 723 (Ind. 1993). Any ambiguity must be resolved against imposing the penalty, and only those cases which are clearly within its meaning and intention can be brought within the statute. *State v. McGill,* 622 N.E.2d 239, 240 (Ind.Ct.App.1993). Although we are bound by the legislative definition of "custodian," the phrase "responsible for a child's welfare" is ambiguous because the wording could support either the State's or D.M.Z.'s interpretation. *See Sullivan,* 661 N.E.2d at 853. Because there is an ambiguity, we turn to rules of statutory construction to aid in our determination of the legislative intent.

 Undefined words in a statute are given their plain, ordinary and usual meaning. IND. CODE § 1–1–4–1(c). Courts may consult English language dictionaries to ascertain the plain and ordinary meaning of a statutory term. *State Bd. of Accounts v. Indiana University Found.,* 647 N.E.2d 342, 347 (Ind.Ct.App.1995), *trans. denied.* The meaning of doubtful words may also be determined by reference to their relationship with other associated words and phrases. 2A SUTHERLAND STATUTORY CONSTRUCTION § 47.16 at 182 (5th ed.1992) (hereinafter "STATUTORY CONSTRUCTION"). The canon of construction known as *noscitur a sociis* provides that the meaning of a doubtful word may be ascertained by reference to the meaning of other words associated with it. *Lincoln Nat'l Bank v. Review Bd. of Indiana Employment Sec. Div.,* 446 N.E.2d 1337, 1338–39 (Ind.Ct.App.1983). This maxim means "it is known from its associates" and in practical application means that a word may be defined by an accompanying word, and ordinarily the coupling of words denotes an intention that they should be understood in the same general sense. STATUTORY CONSTRUCTION § 47.16 at 183.

Here, custodian is defined as a person "responsible" for a child's welfare. The dictionary defines "responsible" as "involving personal accountability or ability to act without guidance or superior authority." THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE at 1108 (1981). The term "custodian" is used together with "guardian,"

"adoptive parent," "adoptive grandparent" and "stepparent." The grouping of "custodian" with these terms and the definition of "responsible" indicate a legislative intent that as used in the statute "custodian" means an individual who occupies a position of trust, authority and responsibility *in loco parentis*.

This court addressed a similar question in *Dayton v. State*, 501 N.E.2d 482 (Ind.Ct.App. 1986). In that case, we were asked to determine the propriety of a jury instruction which stated that a parent, guardian or custodian had the right to use corporal punishment in disciplining a child. In determining that the instruction incorrectly stated the law, we defined the term custodian. This court recognized that the spectrum within the custodian classification ranged from a parent at one end to a stranger who agrees to watch a baby or a child at the other end. *Id.* at 485. Although the term custodian could include a broad range of persons, we concluded in *Dayton* that in determining who may lawfully use corporal punishment, the term custodian was limited to parents, schoolteachers and persons *in loco parentis*. *Id.*

The commentary to the Model Penal Code further supports our conclusion that "custodian" is a term of limited application. Indiana's child seduction statute is similar to the Model Penal Code's offense of Corruption of Minors and Seduction which states that a person is guilty of the offense if "the other person is less than 21 years old and the actor is his guardian or otherwise responsible for general supervision of his welfare." MODEL PENAL CODE § 213.3(1)(b) (Proposed Official Draft 1962). The comments to this section indicate that the tentative draft of this offense reached anyone responsible for "care, treatment, protection, or education" of a child. *Id.* at cmt. 3. This wording was rejected by the drafters of the Model Penal

Code because it was too broad in its impact. *Id.* The Model Penal Code states that:

> Perhaps the principal function of Section 213.3(1)(b) is to repress such relations where the child is less than 21 years old and where the stepfather has been appointed guardian or stands *in loco parentis*. This provision punishes such conduct for what it is—not incest, but aggravated illicit intercourse achieved by misuse of a position of authority and control.

*Id.* Although the Indiana child seduction statute is not limited to a stepparent-child relationship, like the Model Penal Code the Indiana statute includes within its purview only those who have authority tantamount to that of a parent or guardian.[2]

Here, the State's evidence shows that D.M.Z. was a staff employee at the Shelter and held the position of a "child-care worker." She was responsible for supervision of the day-today activities of the residents and would discuss with parents, probation officers, and caseworkers a child's specific behavioral problems. Record at 110. D.M.Z. could decide whether a child was to participate in a school recreational function or an extracurricular activity based upon the child's behavior, and she could suspend a child's privileges if necessary. Record at 111. As a child-care worker, D.M.Z. was expected to handle medical emergencies and was permitted to administer over-the-counter medications. Record at 111. Her duties also required her to monitor a resident's daily hygiene habits. Record at 112.

However, to be a "custodian" within the meaning of the child seduction statute, an individual must exercise more than limited or occasional supervision over a child. D.M.Z. was an hourly employee at the very bottom of the organization chart and was herself subject to the direction and control of a

**2.** Other legislative definitions of the term custodian support our conclusion that the term "custodian" as a "person responsible for a child's welfare" requires more than a mere supervisory role. In the Dissolution of Marriage Act, the legislature has stated that a custodian's responsibilities include the determination of "the child's upbringing, including his education, health care, and religious training ..." IND. CODE § 31-1-

11.5-21. The Child In Need of Services ("CHINS") statute defines custodian as "a person with whom a child resides." IND. CODE § 31-6-1-2. The legislative definition of certain words in one statute, while not conclusive, is entitled to consideration in construing the same words in another statute. *State Bd. of Accounts v. Indiana University Foundation*, 647 N.E.2d 342, 348 (Ind.Ct.App.1995), *trans. denied.*

counselor.[3] On these facts, it cannot be said that she was responsible for the child's welfare.

We hold that to be a custodian under the statute, a person "responsible for a child's welfare," a person must occupy a position of trust and have the authority and responsibility to make decisions concerning the child's welfare, to act without guidance or superior authority, as a parent would or *in loco parentis*. D.M.Z. did not occupy such a position. Accordingly, we hold that D.M.Z. was not C.P.'s custodian and that the trial court properly dismissed the charges against her.

Affirmed.

ROBERTSON and HOFFMAN, JJ., concur.

---

**3.** The counselor at the shelter had the responsibility to supervise the staff, develop individual treatment plans for each child describing what to accomplish while residing the shelter, including educational goals, family issues goals, health and hygiene, drug and alcohol treatment and social skills. Record at 59. The counselor provided counseling for each child and family. Record at 59. The counselor was available by pager at all times to address problems with a child. Record at 59. The counselor determined whether a child could participate in certain functions and signed parental consent forms. Record at 59. The counselor also supervised the discharge of each child and made recommendations for future placement. Record at 60.