STATE of Indiana, Appellant–Plaintiff,

v.

Paula J. FETTIG, Appellee–Defendant.

No. 49A02–0709–CR–807.

Court of Appeals of Indiana.

April 15, 2008.

Rehearing Denied June 10, 2008.

Steve Carter, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellant.

John F. Kautzman, Ruckleshaus, Kautzman, Blackwell, Bemis & Hasbrook, Indianapolis, IN, Attorney for Appellee.

Thomas E. Wheeler, II, Locke Reynolds LLP, Indianapolis, IN, Attorney for Amicus Curiae The Indiana School Boards Association, and The Indiana Association of Public School Superintendents.

Eric M. Hylton, Dann Pecar Newman & Kleiman, P.C., Indianapolis, IN, Attorney for Amicus Curiae The Indiana State Teachers Association.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellee–Plaintiff, the State, appeals the trial court's dismissal of an Information filed against Appellee–Defendant, Paula J. Fettig (Fettig), charging her with battery,

as a Class A misdemeanor, Ind.Code § 35–42–2–1.[1]

We affirm.

## ISSUE

The State presents one issue for our review: Whether the trial court abused its discretion when it dismissed the battery charge against Fettig.

## FACTS AND PROCEDURAL HISTORY

On January 24, 2007, Fettig was teaching her gym class at Beech Grove High School. During the class, a student playing kickball, T.C., hurt her ankle and T.C.'s friend, S.D., checked on her. Fettig approached and after a series of events made contact with her hand to S.D.'s face. On January 29, 2007, S.D. reported the incident to the Beech Grove Police Department.

The probable cause affidavit explains that a detective interviewed S.D. and three other students present that day in Fettig's class, K.B., L.C., and T.C. When the detective interviewed S.D., she stated:

> That she was in gym class when one of her classmates hurt her ankle during a play. [S.D.] remembered that while she was checking on the classmate's welfare, her gym teacher [Fettig] slapped her on the face telling her to "go play" and that the slap stung. [S.D.] went on to explain that there were [four] to [five] students in the immediate area who may have seen or heard the slap to the face.

(Appellant's App. p. 8).

K.B. explained to the detective that several students surrounded T.C. Fettig yelled at T.C. to get up, and then walked toward her. S.D. told Fettig that T.C. was really hurt. Fettig made a joke about the shoes that T.C. was wearing, and then another student, L.C., said "shut up Fettig." (Appellant's App. p. 8). K.B. then heard a slap from where Fettig and S.D. were standing, but did not see the contact between Fettig and S.D.

L.C. told the detective that Fettig tried to make T.C. laugh. L.C. told Fettig to shut up, and then heard a slap. T.C. told the detective that she saw Fettig slap S.D. with an open hand on the left side of her face. In addition, the detective interviewed a student assistant helping in Fettig's class that day, and Fettig. The student assistant remembered Fettig slapping S.D. on the left side of her face with an open hand. However, Fettig told the detective that she had cupped the chin of S.D. with her hand and ordered her to go play.

On February 28, 2007, the State filed an Information charging Fettig with battery, as a Class A misdemeanor, I.C. § 35–42–2–1. The Information alleged that Fettig "did knowingly in a rude, insolent or angry manner touch [S.D.], another person, and further that said touching resulted in bodily injury to the other person, specifically: pain." (Appellant's App. p. 7). On June 28, 2007, Fettig filed a motion to dismiss the battery charge. Attached to the motion to dismiss was an affidavit from Fettig stating, in pertinent part:

> 3. On or about January 24, 2007, I was teaching a physical education class and watching the students that were engaged in a game of kick ball on the gymnasium floor. During the game, one of the students, [T.C.], sprained her ankle. I helped [T.C.] to the side of the gymnasium floor as other students began to tease her. Her friend, S.D., sat

1. We have granted Amicus Curiae status to the Indiana School Boards Association, the Indiana Association of Public School Superintendents, and the Indiana State Teachers Association (collectively "the Amicus Curiae"), which have together filed an amicus brief.

down beside her and was yelling back at the other students in the class for their mocking of [T.C.]. Profanity was being used by S.D. in yelling at the other students and the situation was getting out of hand.

4. I approached S.D. and said her name three [ ] times in an effort to gain her attention and regain control of the class. S.D. ignored me[.] I reached toward her, turned her chin toward me, and told her to get up and "go play."

(Appellant's App. pp. 26–27). On August 15, 2007, the trial court granted Fettig's motion to dismiss.

The State now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

The State argues that the trial court abused its discretion when it granted Fettig's motion to dismiss. Specifically, the State argues that although teachers are permitted to use reasonable corporal punishment when disciplining children, whether Fettig's actions were a form of reasonable corporal punishment is a question of fact that must be determined by a trier of fact.

On appeal from the grant of a motion to dismiss an information, we review the trial court's ruling for an abuse of discretion. *Zitlaw v. State*, 880 N.E.2d 724, 728–29 (Ind.Ct.App.2008). In reviewing a trial court's decision for an abuse of discretion, we reverse only where the decision is clearly against the logic and effect of the facts and circumstances. *Id.*

Indiana Code section 35–34–1–4(5) provides that an information may be dismissed when the facts stated do not constitute an offense. A trial court considering a motion to dismiss need not rely entirely on the text of the charging information but can hear and consider evidence in determining whether or not a defendant can be charged with the crime alleged. *Zitlaw*, 880 N.E.2d at 728–29.

The State relies primarily on *State v. Isaacs*, 794 N.E.2d 1120, 1123 (Ind.Ct.App. 2003), to develop its contention that the existence of a statutory defense to charges does not permit the dismissal of an information, but rather is an issue that must be decided at trial. In *Isaacs*, we were presented with a situation where the trial court had dismissed an information charging Isaacs in part with operating a vehicle with a controlled substance in his body. *Id.* at 1122. Before the trial court, Isaacs had moved to dismiss arguing that he had a valid prescription for the controlled substance. *Id.* We acknowledged that the existence of a valid prescription for a controlled substance is a statutory defense to operating with a controlled substance in one's body; however, we explained that, "whether one has a statutory defense goes beyond the issues that may be decided by a motion to dismiss and instead is a matter appropriately decided at trial." *Id.*

Fettig cites *State v. D.M.Z.*, 674 N.E.2d 585 (Ind.Ct.App.1996), in an attempt to persuade us that the trial court did not abuse its discretion in dismissing the Information. In *D.M.Z.*, a child-care worker employed at a shelter allegedly had sexual contact with a minor staying at the shelter and was charged with child seduction, a Class D felony, I.C. § 35–42–4–7. *Id.* at 587. At the time when D.M.Z. allegedly had the sexual contact with the minor, the child seduction statute stated that only guardians, adoptive parents, adoptive grandparents, custodians, or stepparents of a child can commit child seduction. I.C. § 35–42–4–7 (1996).[2] The statute defined

---

2. The child seduction statute has since been amended by our legislature to add "child care

custodians as "any person responsible for a child's welfare who is employed by a public or private residential school or foster care facility." *Id.* D.M.Z. moved to dismiss the information arguing that she was not the minor's custodian, or in any other qualifying relationship with the child, and, therefore, as a matter of law could not be charged with the crime of child seduction for her alleged acts. *D.M.Z.*, 674 N.E.2d at 587. We determined that the phrase "responsible for a child's welfare" was ambiguous, and applied the rules of statutory construction to conclude that the phrase required a person to "occupy a position of trust and have the authority and responsibility to make decisions concerning the child's welfare, to act without guidance or superior authority, as a parent would or *in loco parentis.*" *Id.* at 590. We considered the State's evidence that had been submitted to the trial court and determined that D.M.Z. did not occupy such a position with the minor. *Id.* at 589–90. Accordingly, we concluded that the trial court properly dismissed the charges against D.M.Z. *Id.* at 590.

The Amicus Curiae direct our attention to *Melo v. State*, 744 N.E.2d 1035 (Ind.Ct. App.2001). In *Melo*, the defendant was charged with two counts of interference with the trial court's custody order. *Id.* The Information alleged that the defendant had removed children subject to the custody order to a place outside of Indiana between the dates of June 9, 1999, and August 12, 1999. *Id.* at 1036. We explained that the crime of interference with custody, I.C. § 35–42–3–4, requires the act of removing the children from Indiana. Relying on the ordinary meaning of the word remove, we held that the defendant

could not have committed the offense alleged to have occurred between July 9, 1999, and August 12, 1999. We relied upon facts that the children had stayed with the defendant in Florida since July 1998, pursuant to a court order, although it was not stated in our decision how those facts were presented to our court or the trial court. *Id.* at 1038. Accordingly, we concluded that the trial court had erred by denying Melo's motion to dismiss. *Id.*

The distinguishing marks between *Isaacs, D.M.Z.*, and *Melo* are somewhat translucent. However, the procedures laid out by our legislature for dismissing an information or indictment in Indiana Code section 35–34–1–8 are helpful. Relevant to our determination, the statute provides:

> If the motion [to dismiss] is expressly or impliedly based upon the existence or occurrence of facts, the motion shall be accompanied by affidavits containing sworn allegation of these facts. The sworn allegations may be based upon personal knowledge of the affiant or upon information and belief, provided that in the latter event the affiant discloses the sources of the information and the grounds for the belief.

> . . .

> If a hearing is necessary to resolve questions of fact, the court shall conduct a hearing and make findings of fact essential to the determination of the motion. The defendant has a right to be present and represented by counsel at the hearing but may waive this right. The defendant has the burden of proving by a preponderance of the evidence every fact essential to support the motion.

worker[s]" to the list of persons who could commit child seduction. I.C. § 35–42–4–7(h)(2)(B). "Child care worker[s]" are defined, in part, as persons who provide "care,

supervision, or instruction to a child within the scope of the person's employment in a shelter care facility." I.C. § 35–42–4–7(c).

I.C. § 35–34–1–8(a) & (f). It is apparent that our legislature has granted our trial courts a certain level of discretion to determine factual issues when considering motions to dismiss informations.

The trial court summarized its findings in its Order granting Fettig's motion to dismiss by stating:

> Here we have a classroom disturbance wherein the teacher uses some measure of touching to restore order and redirect the focus of the class. No weapons; no closed fist[;] no repeated blows; no verbal abuse; just an open handed touching to the face of a [fifteen-year-old] student which caused her face to sting.

(Appellant's App. p. 40). We conclude these findings are consistent with all of the witness statements set out in the State's probable cause affidavit and Fettig's affidavit submitted with her motion to dismiss. Moreover, we conclude that these findings are well within the discretion afforded trial courts by our legislature when considering motions to dismiss informations. *See* I.C. § 35–34–1–8.

Moreover, when the law defining the rights of teachers to discipline students is considered, it is apparent that the trial court did not abuse its discretion by ultimately finding that Fettig's actions fell within the bounds of her protection from prosecution for battery. Our legislature has provided authority to school personnel to discipline students by stating:

> in all matters relating to the discipline and conduct of students, school corporation personnel: (1) stand in the relation of parents to the students of the school corporation; and (2) have the right to take any disciplinary action necessary to promote student conduct that conforms with an orderly and effective educational system.

I.C. § 20–33–8–8(b). Further, Indiana Code section 20–33–8–9 provides that teachers "may take any action that is reasonably necessary to carry out or to prevent an interference with an educational function that the individual supervises."

In general, "[a] person is justified in engaging in conduct otherwise prohibited if he has legal authority to do so." I.C. § 35–41–3–1. This statute has been interpreted to provide legal authority for a parent to engage in reasonable discipline of her child, even if such conduct would otherwise constitute battery. *Dyson v. State*, 692 N.E.2d 1374, 1376 (Ind.Ct.App. 1998). Although there is a dearth of recent case law addressing the subject, this same justification has long been extended to teachers as well, as long as the teacher acts within the limits of her "jurisdiction and responsibility as a teacher." *Vanvactor v. State*, 113 Ind. 276, 15 N.E. 341, 342 (Ind.1888). Moreover, teachers are given, in addition to the presumption of innocence shared by all criminal defendants, a presumption of having done their duty when punishing a student. *Id.*

The State argues that since the justification for teachers to corporally punish is limited by notions of reasonableness, the issue must be presented to a jury. However this is the very issue which our appellate courts have removed from the discretion of the jury by reversing verdicts finding battery by teachers who have hit students to inflict punishment. *See Vanvactor*, 15 N.E. at 342; *see also Danenhoffer v. State*, 69 Ind. 295, 1879 WL 5751 (Ind.1879); *see also Marlsbary v. State*, 10 Ind.App. 21, 37 N.E. 558 (Ind.Ct.App. 1894).

In *Vanvactor*, 15 N.E. at 341, our supreme court considered a circumstance where a teacher punished a student who made other students laugh while the teacher's head was turned. The student retaliated by taking the teacher's overcoat after

school. *Id.* For this act, the teacher advised the student that he would either be suspended or "take a whipping;" the student opted for the latter. *Id.* The teacher delivered nine sharp blows with a switch to the back of the student's legs. *Id.* Two days later the teacher was arrested and charged with assault and battery. *Id.* After hearing the evidence, which included the student's testimony that the teacher had laid the blows hard, as if he was angry, and testimony from two or three persons who saw marks and abrasions on the student's legs left from the whipping, a jury found the teacher guilty as charged. *Id.* at 342. Our supreme court considered the evidence and concluded that, "as a whole, [it] did not sustain the verdict." *Id.*

In *Danenhoffer*, 1879 WL 5751 at 2, students who had failed to give an excuse for their absence from school were directed to take a note to the superintendent of their small catholic school, but ran home and never delivered the note. The next day, the superintendent whipped the students. *Id.* The State charged the superintendent with assault and battery for the whipping of one of the students, and the case was twice tried to a jury, which entered a verdict of guilty as charged both times. *Id.* at 1. Despite these verdicts, our supreme court determined that the evidence was insufficient to sustain a conviction for assault and battery in light of the justification for a teacher to punish students. *Id.* at 2.

In *Marlsbary*, 10 Ind.App. 21, 37 N.E. 558, we considered the evidence supporting the conviction of a teacher for assault and battery for his acts of inflicting corporal punishment. Although we did not discuss the specific facts of the student's misbehavior, or the specifics of the punishment, we reversed the judgment of conviction. We concluded that the teacher could only be convicted of assault and battery in the event that the punishment was cruel or excessive, and beyond the bounds of moderation. *Id.*

Having reviewed the longstanding precedents of *Vanvactor*, *Danenhoffer*, and *Marlsbary*, we note that they demonstrate the ability of the judiciary to determine whether a teacher has acted within the bounds of her authority to discipline when striking a student. Considering the facts here—no weapons, no closed fist, no repeated blows, no verbal abuse, and the only alleged injury being a stinging sensation—in context with the right of teachers to be free from criminal prosecution for physical punishment that is neither cruel nor excessive, we conclude that the trial court did not abuse its discretion by dismissing the information charging Fettig with battery.

### CONCLUSION

Based on the foregoing, we conclude that the trial court did not abuse its discretion when it dismissed the Information charging Fettig with battery.

Affirmed.

MAY, J., concurs.

KIRSCH, J., dissents with separate opinion.

KIRSCH, Judge, dissenting.

We do not know whether Ms. Fettig's slapping of one of the students under her care was an appropriate exercise of discipline or a battery punishable under our criminal laws. It could have been either. That's why we have trials.

We do not know whether the Beech Grove school system has a policy regarding corporal punishment, and we do not know whether Ms. Fettig followed it. That's why we have trials.

We do not know whether Ms. Fettig was lashing out in anger when she struck the student or whether she was exercising the restraint we should expect from those to whom we entrust our children. That's why we have trials.

My colleagues cite three cases as authority for upholding the trial court's action. All three date from the 19th century. The world has changed greatly since that time, and standards of student discipline have also changed greatly. A quick internet search will show that a majority of states, together with a large number of countries in the western world, now ban the use of corporal punishment in schools. Serious questions can be raised whether corporal punishment is counterproductive and abusive. While Indiana has not banned the use of corporal punishment in schools, I have serious doubts that our Supreme Court today would uphold the "whipping" which left marks and abrasions on the student's leg as it did in *Vanvactor v. State*, 113 Ind. 276, 15 N.E. 341, 342 (Ind.1888) or would uphold the "whipping" administered by a school superintendent to a student for failing to deliver a note as it in *Danenhoffer v. State*, 69 Ind. 295, 1879 WL 5751 (Ind.1879).

The State should have its day in court. I believe the trial court erred in dismissing the charge, and, accordingly, I respectfully dissent.