Trinda BAROCAS, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–1007–CR–732.

Court of Appeals of Indiana.

May 31, 2011.

Gregory F. Zoeller, Attorney General of Indiana, Jodi Kathryn Stein, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MAY, Judge.

Trinda Barocas, while employed as a special education teacher, "flicked"[1] a student's tongue with her finger. At trial, she asserted she was not guilty because teachers have qualified immunity for reasonably necessary disciplinary acts. The trial court convicted her of Class B misdemeanor battery.[2] As the State did not disprove her defense, we reverse.[3]

## FACTS AND PROCEDURAL HISTORY

During a period of over eleven years, Barocas taught special education at three schools. In February of 2009, Barocas had eight students in her classroom. One was ten-year-old A.R., who has Down syndrome and often left her tongue hanging out of her mouth.[4] As a physical prompt to remind A.R. to put her tongue back in her mouth, Barocas typically used two of her fingers to tap A.R. on the bottom lip.

On February 23, 2009, after twice telling A.R. to put her tongue back in her mouth, Barocas "flicked" A.R.'s tongue with her

Suzy St. John, Marion County Public Defender, Indianapolis, IN, Attorney for Appellant.

1. One witness demonstrated the "flick" as Barocas "holding her middle finger back" with her thumb and then releasing it. (Tr. at 164.) Another called it "a flipping motion with her fingers" toward the student's lip. (*Id.* at 170.)

2. Ind.Code § 35-42-2-1.

3. We heard oral argument April 21, 2011, at Ivy Tech in Evansville. We thank the School for its hospitality and commend counsel on the quality of their advocacy.

4. Down syndrome is a genetic disorder that causes lifelong mental retardation, developmental delays, and other problems. Down syndrome varies in severity, so developmental problems range from moderate to serious. http://www.mayoclinic.com/health/down-syndrome/DS00182 (last visited March 31, 2011). One "common" feature of Down syndrome is having a "protruding tongue." http://www.mayoclinic.com/health/down-syndrome/DS00182/DSECTION=symptoms (last visited March 31, 2011).

middle finger and thumb. A.R. "let out a wail," (Tr. at 51), and started crying.

At trial, Barocas denied "flicking" A.R. She testified she used her normal physical prompt, and she agreed the "flicking" described by witnesses would not be a correct prompt. The trial court found "[t]he tap on the chin or the lips might be a reasonable prompt, but a flick is not. I find the evidence as to the flick on Count II does rise to the level of a crime." (Tr. at 187–88.) The court entered a conviction of Class B misdemeanor battery.

### DISCUSSION AND DECISION

■ A person is generally "justified in engaging in conduct otherwise prohibited if he has legal authority to do so." Ind. Code § 35–41–3–1. This statute has been interpreted to provide legal authority for a parent to engage in reasonable discipline of her child, even if such conduct would otherwise be battery. *State v. Fettig*, 884 N.E.2d 341, 345 (Ind.Ct.App.2008), *reh'g denied.* The same justification has been extended to teachers, as long as the teacher acts within the limits of her "jurisdiction and responsibility as a teacher." *Id.* (quoting *Vanvactor v. State*, 113 Ind. 276, 280, 15 N.E. 341, 342 (1888)).

■ Regarding teachers, our legislature has provided:

In all matters relating to the discipline and conduct of students, school corporation personnel:

(1) stand in the relation of parents to the students of the school corporation;

(2) have the right to take any disciplinary action necessary to promote student conduct that conforms with an orderly and effective educational system, subject to this chapter; and

(3) have qualified immunity with respect to a disciplinary action taken to promote student conduct under subdivision (2) if

the action is taken in good faith and is reasonable.

Ind.Code § 20–33–8–8(b). Moreover, in addition to the presumption of innocence shared by all criminal defendants, we presume teachers do their duty when punishing a student. *Fettig*, 884 N.E.2d at 345.

Our Indiana Supreme Court recently addressed the parental privilege:

A parental privilege to use moderate or reasonable physical force, without criminal liability, was recognized at common law. For example, Blackstone observed, "[B]attery is, in some cases, justifiable or lawful; as where one who hath authority, a parent or master, gives moderate correction to his child, his scholar, or his apprentice." William Blackstone, 3 Blackstone's Commentaries on the Laws of England 120 (Oxford reprint 1992). A similar view has been expressed in this state's jurisprudence. *See e.g., Hinkle v. State*, 127 Ind. 490, 26 N.E. 777, 778 (1891) ("[F]ather has the right to administer proper and reasonable chastisement to his child without being guilty of an assault and battery, but he has no right to administer unreasonable chastisement, or to be guilty of cruel and inhuman treatment of his child...."); *Hornbeck v. State*, 16 Ind. App. 484, 45 N.E. 620, 620 (1896) ("The law is well settled that a parent has the right to administer proper and reasonable chastisement to his child without being guilty of an assault and battery....").

A number of jurisdictions have specifically codified a parental discipline privilege. Although Indiana has not yet done so, our courts have construed Indiana Code section 35–41–3–1—the defense of legal authority—as including reasonable parental discipline that would otherwise constitute battery. *See Cooper v. State*, 831 N.E.2d 1247, 1252 (Ind.

Ct.App.2005). Over several decades our courts have addressed parental claims of legal authority. *See, e.g., Johnson v. State*, 804 N.E.2d 255, 257 (Ind.Ct.App. 2004); *Dyson v. State*, 692 N.E.2d 1374, 1376 (Ind.Ct.App.1998); *Townsend v. State*, 616 N.E.2d 47, 50 (Ind.Ct.App. 1993), *rev'd on other grounds*, 632 N.E.2d 727, 730–31 (Ind.1994); *Smith v. State*, 489 N.E.2d 140, 141–42 (Ind.Ct. App.1986). Nonetheless, as the Court of Appeals has observed, there is still "precious little Indiana caselaw providing guidance as to what constitutes proper and reasonable parental discipline of children, and there are no bright-line rules." *Mitchell v. State*, 813 N.E.2d 422, 427 (Ind.Ct.App.2004). We agree. And since adoption of the Criminal Code, this Court has not had the occasion to address the parental discipline privilege.

*Willis v. State*, 888 N.E.2d 177, 180–81 (Ind.2008) (footnotes omitted). As a standard for determining applicability of the parental privilege, the Willis Court adopted the Restatement of the Law (Second) Torts § 147(1) (1965): "A parent is privileged to apply such reasonable force or to impose such reasonable confinement upon his [or her] child as he [or she] reasonably believes to be necessary for its proper control, training, or education."

■ The defense of parental privilege, like self-defense, is a complete defense. *Id.* at 182. That is to say, a valid claim of parental privilege is a legal justification for an otherwise criminal act. *Id.* To negate a claim of parental privilege, the State must disprove beyond a reasonable doubt at least one element of the defense, either by direct rebuttal or by relying on the sufficiency of the evidence in its case-in-chief. *Id.* Thus, to sustain a conviction of battery where a claim of parental privilege has been asserted, the State must prove either: (1) the force the parent used was unreasonable, or (2) the parent's belief that such force was necessary to control her child and prevent misconduct was unreasonable. *Id.* As the State has not met its burden, we reverse Barocas' conviction.

### 1. *Reasonableness of the Force Used*

■ The first factor of the test adopted in *Willis* is the reasonableness of the force or confinement imposed. The Restatement explains the factors that may be considered in determining the reasonableness of punishment:

In determining whether force or confinement is reasonable for the control, training, or education of a child, the following factors are to be considered:

(a) whether the actor is a parent;

(b) the age, sex, and physical and mental condition of the child;

(c) the nature of his offense and his apparent motive;

(d) the influence of his example upon other children of the same family or group;

(e) whether the force or confinement is reasonably necessary and appropriate to compel obedience to a proper command;

(f) whether it is disproportionate to the offense, unnecessarily degrading, or likely to cause serious or permanent harm.

Restatement of the Law (Second) Torts § 150 (1965).

In *Fettig*, the State charged Fettig, a gym teacher, with battery. During gym class a student hurt her ankle and another student was checking on her. That student reported Fettig "slapped her on the face telling her to 'go play' and the slap stung." 884 N.E.2d at 342. The trial court granted Fettig's motion to dismiss, and we affirmed:

Considering the facts here—no weapons, no closed fist, no repeated blows, no verbal abuse, and the only alleged injury being a stinging sensation—in context with the right of teachers to be free from criminal prosecution for physical punishment that is neither cruel nor excessive, we conclude that the trial court did not abuse its discretion by dismissing the information charging Fettig with battery.

*Id.* at 346. Even presuming, as we must based on the trial court's explicit finding of fact that Barocas flicked A.R.'s tongue, her "flick" cannot be characterized as either "cruel [or] excessive," *id.*, and we agree with Barocas that her use of force "was nowhere near the level in *Fettig*, nor was it egregious in any way." (Br. of Appellant at 11.)

The State points to Barocas' own testimony that a "flick" is not an appropriate physical prompt and would have been wrong to do under the circumstances. But the State offers no explanation or legal authority to support its apparent premise that because the flicking is "wrong" under some professional standard, it necessarily must also amount to "unreasonable force" for purposes of determining whether the parental privilege applies. We decline to so hold.

The State also notes the victim's reaction to the flick: she "let out a wail" and began to cry. (Tr. at 30.) But the State offers no legal authority or explanation to support its apparent premise the reasonableness of force in this context can be determined by the victim's reaction to it.

We have found no Indiana decisions in which a parent or teacher's conviction of battery was upheld based on the use of force as minimal as that used by Barocas.

*Cf. McReynolds v. State*, 901 N.E.2d 1149, 1155 (Ind.Ct.App.2009) (use of belt and wooden clothes hanger with metal prongs to spank child at least five times, causing severe bruising and bleeding and resulting in hospitalization, would be unreasonable even if parental privilege had applied); *and see, e.g., Willis*, 888 N.E.2d at 184 (parental privilege was a defense when mother swatted child five to seven times with a belt or electric cord, leaving bruises); *Fettig*, 884 N.E.2d at 342 (battery charge properly dismissed where teacher slapped a student on the face and told her to "go play", and the slap stung). Neither has the State offered us authority from any other jurisdiction that would support rejecting the parental privilege under circumstances similar to this. We accordingly cannot find the State proved the force Barocas used was unreasonable.

## 2. Reasonableness of Barocas' Belief the Use of Force was Necessary

■ Nor did the State prove the second element of the test adopted in *Willis*—that Barocas was unreasonable to believe a physical prompt was necessary to control A.R.'s behavior of sticking out her tongue. *See Willis*, 888 N.E.2d at 182.

The State's argument on this issue, like its reasonableness argument, is devoid of legal authority. The State again notes evidence Barocas' "flicking ... was not an appropriate physical prompt," (Br. of Appellee at 8), but offers no authority to the effect that the "professional inappropriateness" *vel non* of an act determines the reasonableness of Barocas's "*belief that such force was necessary* to control her child and prevent misconduct." *See Willis*, 888 N.E.2d at 182 (emphasis added).[5]

---

**5.** Barocas notes the witnesses who testified otherwise "had no special training or experience in communication techniques with stu-

dents who are unable [to] process verbal instructions," (Br. of Appellant at 13), and the State called no "expert who was in the posi-

As the State has not negated Barocas' defense based on her claim of parental privilege, we must reverse.

Reversed.

BAILEY, J., and BROWN, J., concur.

tion to opine" whether Barocas "stepped outside the bounds of well-recognized practices in this field." (*Id.*) Barocas, by contrast, had "many years of training and experience." (*Id.*)