FILED

Feb 05 2018, 5:43 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEYS FOR APPELLANT

Matthew J. Elliott
Taylor A. Beaty
Beckman Lawson, LLP
Fort Wayne, Indiana

ATTORNEY FOR APPELLEE

David W. Frank
Christopher C. Myers & Associates
Fort Wayne, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Fort Wayne Community Schools and Jacalyn Butler, *Appellants-Defendants,* v. Steffanie Haney, for next friend and minor daughter, M.H., *Appellee-Plaintiff.* | February 5, 2018 Court of Appeals Case No. 02A03-1708-CT-1829 Appeal from the Allen Superior Court The Honorable David J. Avery, Judge. Trial Court Cause No. 02D09-1605-CT-270 |

**Mathias, Judge.**

[1] Fort Wayne Community Schools and its employee Jacalyn Butler (collectively "FWCS") bring this interlocutory appeal from the Allen Superior Court's partial denial of summary judgment on Steffanie Haney's ("Haney") complaint alleging battery against her daughter M.H. and a 42 U.S.C. § 1983 violation of M.H.'s Fourth Amendment rights.

We reverse and remand.

## Facts and Procedural History

In the fall of 2015, Jacalyn Butler ("Butler") was a first-grade teacher at Forest Park Elementary School in Fort Wayne, Indiana.[1] M.H. was a student in Butler's classroom. On November 12, 2015, the students were taking a spelling test. While Butler was monitoring the classroom, she noticed M.H. dropping erasers and other items onto the floor. As M.H. leaned down to pick up the items, she placed her head under the desk which caused her posterior to rise up. On one of these occasions, it is undisputed that Butler walked by and touched M.H.'s posterior to induce M.H. to sit back down into her seat.

The parties disagree on the level of force Butler exerted on M.H. Butler maintains that "she patted M.H.'s rear end with the tips of three fingers, attempting to re-direct her into her seat." Appellants' App. p. 93. M.H. agreed with Butler's account during deposition testimony. *Id.* at 88–89.[2] Steffanie Haney ("Haney"), M.H.'s mother, asserts that Butler spanked or smacked M.H.'s behind. *Id.* at 133–34.

The school corporation investigated the incident, and although it could not substantiate the allegation of spanking, Butler was suspended for one day

---

[1] Forest Park Elementary is within the Fort Wayne Community School Corporation, and Butler was a school corporation employee at the relevant time.

[2] We also note that M.H. testified during her deposition that Haney told M.H. to testify that Butler hit her, and that she would be in trouble with her parents if she testified otherwise. Appellants' App. pp. 77–78.

without pay for inappropriate and unprofessional behavior in violation of the school corporation's board policy and code of ethics.[3] *Id.* at 132. Haney filed a complaint on May 25, 2016, which brought state law battery tort claims against Butler and the school corporation, and federal § 1983 claims against Butler and the school corporation alleging a violation of M.H.'s Fourth Amendment rights.[4]

[6] FWCS filed a motion for summary judgment on March 24, 2017. On July 12, 2017, the trial court granted the motion in part and denied it in part. The trial court denied summary judgment on Haney's state law tort claim against the school corporation and the § 1983 claim against Butler.[5] FWCS filed a motion to certify the order for interlocutory appeal on August 9 which the trial court granted on August 22. We accepted jurisdiction of the appeal under Appellate Rule 14(B) on November 1, 2017.

---

[3] The applicable board policy states, "The physical striking or touching of a student with the intent to produce bodily pain by a school employee or other adult representing the school shall not be permitted as an option in disciplining students. Alternative practices shall be utilized." Appellants' App. p. 132. And the applicable code of ethics section instructs personnel to "[m]ake the well-being of students the fundamental value in all decision-making actions." *Id.*

[4] The complaint also originally argued that Indiana Code section 20-33-8-8(b) is unconstitutional; however, Haney later dropped this claim.

[5] The trial court held that Butler was entitled to summary judgment on the state law claim because she was acting within the scope of her employment and thus could not be sued individually under Indiana's Tort Claims Act. Ind. Code § 34-13-3-5(b). Appellants' App. p. 18. The court also found that the school corporation was entitled to summary judgment on the § 1983 claim because it did not have a custom, policy, or practice of constitutional violations. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

# Discussion and Decision

[7] FWCS contends that the trial court erred in granting, in part, Haney's motion for summary judgment. We review a summary judgment de novo, applying the same standard as the trial court and drawing all reasonable inferences in favor of the nonmoving party. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). In conducting our review, we consider only those matters that were designated at the summary judgment stage. *Haegert v. McMullan*, 953 N.E.2d 1223, 1229 (Ind. Ct. App. 2011). Summary judgment is appropriate if the designated evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Hughley*, 15 N.E.3d at 1003; Ind. Trial Rule 56(C).

## I. State Law Battery Claim against FWCS

[8] FWCS argues that the state law claims against it are barred because Butler's actions were permissible and protected by qualified immunity under Indiana Code section 20-33-8-8.

[9] Section 20-33-8-8 states:

> (a) Student supervision and the desirable behavior of students in carrying out school purposes is the responsibility of:
>> (1) a school corporation; and
>> (2) the students of a school corporation.
> (b) In all matters relating to the discipline and conduct of students, school corporation personnel:
>> (1) stand in the relation of parents to the students of the school corporation;

(2)      have the right to take any disciplinary action necessary to promote student conduct that conforms with an orderly and effective educational system, subject to this chapter; and

(3)      have qualified immunity with respect to a disciplinary action taken to promote student conduct under subdivision (2) if the action is taken in good faith and is reasonable.

A teacher may also "take any action that is reasonably necessary to carry out or to prevent an interference with an educational function that the individual supervises." Ind. Code § 20-33-8-9(b). FWCS points to three cases from our court to support its argument that Butler's alleged battery of M.H. is protected by section 20-33-8-8(b)(3)'s qualified immunity as a matter of law. We agree.

[10]    In *State v. Fettig*, 884 N.E.2d 341, 342 (Ind. Ct. App. 2008), a student in a high school gym class went over to check on her friend who had appeared to injure her ankle. Fettig, the gym teacher, approached the two students and allegedly slapped the assisting student on the face with an open hand and told her to go play. Fettig was charged with misdemeanor battery and filed a motion to dismiss the charge which the trial court granted stating:

> Here we have a classroom disturbance wherein the teacher uses some measure of touching to restore order and redirect the focus of the class. No weapons; no closed fist[;] no repeated blows; no verbal abuse; just an open handed touching to the face of a [fifteen-year-old] student which caused her face to sting.

*Id.* at 345. The State appealed, arguing in part that because the justification for teachers to corporally punish students under Indiana Code section 20-33-8-8(b)

is limited by notions of reasonableness, then the issue should have been presented to a jury. A panel of this court disagreed explaining, "this is the very issue which our appellate courts have removed from the discretion of the jury by reversing verdicts finding battery by teachers who have hit students to inflict punishment." *Id.* Thus, we concluded that the trial court did not abuse its discretion when it dismissed the information charging Fettig with battery. *Id.* at 346.

[11] In *Barocas v. State*, 949 N.E.2d 1256, 1257 (Ind. Ct. App. 2011), Barocas, a special education teacher, flicked the tongue of a ten-year-old Down syndrome student after twice telling the student to put her tongue back in her mouth. The student proceeded to let out a wail and began crying. Barocas was convicted of misdemeanor battery during a bench trial. On appeal, a panel of this court reversed Barocas's conviction because the State failed to negate her claim of parental privilege under section 20-33-8-8. *Id.* at 1261. Our court also explained, "in addition to the presumption of innocence shared by all criminal defendants, we presume teachers do their duty when punishing a student." *Id.* at 1258.

[12] And in *Littleton v. State,* 954 N.E.2d 1070 (Ind. Ct. App. 2011), a sixth-grade student who was diagnosed with autism and other disorders had to be physically restrained in a Rifton chair[6] after he began striking himself with his

---

[6] "A Rifton chair is designed for children with orthopedic disorders . . . . [It] is made of wood, has arms and a curved back and seat, and may be used with an orthopedic belt around a child's waist to prevent the child from falling from the chair. The chair may also be used to [confine] a student in a particular location." *Littleton v. State*, 954 N.E.2d 1070, 1072 (Ind. Ct. App. 2011).

hands. Littleton, the student's special education teacher, directed one of her aides to restrain the student in the Rifton chair. The student's legs were strapped to the chair, a belt was wrapped around his waist, and the chair was tipped back so that its back lay flat on the ground with the student's legs up in the air. Littleton was charged with felony criminal confinement, felony neglect of a dependent, and misdemeanor battery. The trial court denied Littleton's motion to dismiss, and she appealed arguing that her acts were entitled to qualified immunity under § 20-33-8-8(b).

We reversed the trial court's denial of Littleton's motion to dismiss holding "it is apparent to us that Littleton's conduct comes within the scope of her statutory qualified immunity as a teacher managing a classroom[.]" *Littleton*, 954 N.E.2d at 1080. The *Littleton* panel also noted "what is educationally appropriate and what is reasonable under the circumstances are not one and the same." *Id.*

Here, the trial court acknowledged that section 20-33-8-8(b) provides for qualified immunity of a teacher if the discipline is undertaken in good faith and is reasonable; but, the court determined that what constitutes "good faith" and what form of discipline is "reasonable" is a question of fact, making summary judgment improper. Appellants' App. pp. 17–18. However, our court in *Fettig* addressed this exact argument and found otherwise. 884 N.E.2d at 345. Most importantly however, the prior cases interpreting section 20-33-8-8 make it clear

that, even if we assume that Butler smacked or spanked M.H., her actions are protected by the statute.[7]

[15]    It is undisputed that the physical contact occurred when the first-grade students were taking a test, and it is undisputed that M.H. was dropping items on the ground and reaching under her desk to pick them up, causing her posterior to rise into the air. Taking action to require that M.H. remain in her seat while the class is taking part in an educational activity falls squarely within section 20-33-8-8(b)(2)'s grant of a teacher's right "to take any disciplinary action necessary to promote student conduct that conforms with an orderly and effective educational system." Further, Butler's alleged conduct here is far less egregious than the alleged behavior of the teachers in *Fettig*, *Barocas*, and *Littleton*. Indeed, these cases show Butler's actions were taken in good faith and were reasonable, as a matter of law.

[16]    Moreover, section 20-33-8-8(b)(1) states that with respect to school matters, teachers "stand in relation of parents to the student of the school corporation."

---

[7] Haney's allegation that M.H. was smacked or spanked is not credible. M.H. testified under oath that Haney told her to say that Butler hit her, conduct on Haney's part that might amount to subornation of perjury. Appellants' App. p. 77. Additionally, M.H. testified that Butler touched M.H.'s behind with three fingers, that she was embarrassed, and that she did not cry. *Id.* at 88–90. We acknowledge that Haney produced a handwritten document stating that Butler "spanked [M.H.'s] butt" and "made her cry." *Id.* at 133. Typed investigation notes also indicate that Butler smacked M.H. on her butt with a hard hit that made her cry. *Id.* at 134. However, the same investigation notes show that another student in the class said that M.H. did not cry. *Id.* Additionally, Haney's proffered exhibit from the school corporation's head of human resources notes that "the allegation of spanking is unsubstantiated." *Id.* at 132. Although FWCS moved to strike these exhibits on the basis that each constituted inadmissible hearsay, the trial court declined to rule on the motion. *Id.* at 18. Thus, while we think Haney's description of the incident is, at best, dubious, and most likely a lie, in light of the designated evidence and the sworn deposition testimony, we are aware of the summary judgment standard, and we will proceed as if Butler did in fact "spank" or "smack" M.H. on the behind.

Therefore, if Butler were allowed to be held civilly liable for allegedly spanking a student at school, then Haney could be held civilly liable for spanking M.H. at home, an action she does frequently. Appellants' App. pp. 71–74, 79–82. As FWCS points out, "this would represent a rather dramatic shift in Indiana law." Reply Br. at 16. Our supreme court explained in *Indiana State Personnel Board v. Jackson*, 244 Ind. 321, 192 N.E.2d 740, 743–44 (1963):

> [T]he law of Indiana clearly accords to the public school teacher in proper cases the same right over a child in his or her school as is possessed by the parent, and this includes the right to administer corporal punishment when it is appropriate. The law is well settled in this state that the teacher stands in loco parentis to the child, and his authority in this respect is no more subject to question than is the authority of the parent. The teacher's authority and the kind and quantum of punishment employed to meet a given offense is measured by the same rules, standards and requirements as fixed and established for parents.

[17]  Thus, viewing the facts most favorable to Haney, we find that Butler's conduct here fell well within the range of permissible conduct by parents, and hence teachers, under section 20-33-8-8(b). Because Butler's conduct comes within the scope of her statutory qualified immunity as a teacher managing a classroom, FWCS was entitled to summary judgment on the state law battery claim.[8]

---

[8] Haney also argues that the qualified immunity conferred by Indiana Code section 20-33-8-8(b)(3) only serves as a defense in a criminal prosecution. Appellee's Br. at 19–21. We disagree. Nothing in the statute itself or the case law interpreting it imposes or has implied such a limitation. And further, qualified immunity is traditionally understood to be a civil law concept. *See Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015) (explaining that qualified immunity exists to shield government officials from civil damages); *Cantrell v. Morris*, 849 N.E.2d 488, 494 (Ind. 2006); *Earles v. Perkins*, 788 N.E.2d 1260, 1267 (Ind. Ct. App. 2003).

## II. Section 1983 Claim against Butler

[18] FWCS also argues that it is entitled to summary judgment on Haney's § 1983 claim against it because the alleged constitutional violation of M.H.'s Fourth Amendment rights was not clearly established. The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable . . . seizures." It does not create a private right of action. When a person believes her Fourth Amendment rights have been violated, the proper claim is brought under 42 U.S.C. § 1983 which "creates a species of tort liability . . . for the deprivation of any rights, privileges, or immunities secured by the Constitution." *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 916 (2017) (citation and quotation marks omitted). Haney asserts that the contact applied to M.H. by Butler "was unreasonable, unnecessary, and inappropriate," Appellee's Br. at 15, and therefore violated M.H.'s Fourth Amendment right to be free from an unreasonable seizure.

[19] Before reaching the merits of Haney's § 1983 claim, "the trial court must exercise its discretion in a way that protects the substance of the qualified immunity defense. It must exercise its discretion so that officials are not subject to unnecessary and burdensome discovery or trial proceedings." *Crawford-El v. Britton*, 523 U.S. 574, 597–98 (1998). "Whether a government official is entitled to qualified immunity is a legal question for resolution by the court, not a jury."

Therefore, the qualified immunity provision in section 20-33-8-8(b)(3) applies equally to civil cases as it does in criminal prosecutions.

*Purtell v. Mason*, 527 F.3d 615, 621 (7th Cir. 2008). The Supreme Court has held that when making a decision on qualified immunity, "the court must determine whether, assuming the truth of the plaintiff's allegations, the official's conduct violated clearly established law." *Crawford-El*, 523 U.S. at 598. If the relevant facts of a case show that there is no violation of clearly established law, then there is no constitutional violation. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

[20] This well-established inquiry asks whether in light of the pre-existing law the unlawfulness of the alleged inappropriate conduct was apparent. *Purtell*, 527 F.3d at 621. And the burden is on the plaintiff to demonstrate the violation of a clearly established right. *Id.* To meet this burden, Haney "may point to closely analogous cases demonstrating that the conduct is unlawful or demonstrate that the violation is so obvious that a reasonable state actor would know that what he is doing violates the Constitution." *Green v. Butler*, 420 F.3d 689, 700 (7th Cir. 2005).

[21] Haney cites to four cases when she asserts that Butler had "reasonable notice that in November 2015 [M.H.] clearly had the right to be free from unreasonable, inappropriate, unnecessary, excessive force in public school." Appellee's Br. at 17. However, three of the cases that Haney cites in support are quite different than the case before us, and clearly distinguishable. *See Safford Unified School Dist. No. 1 v. Redding*, 557 U.S. 364, 378–79 (2009) (finding that a strip search of a thirteen-year-old girl was unreasonable under the Fourth Amendment, but three school officials were protected from liability through

qualified immunity); *New Jersey v. T.L.O.*, 469 U.S. 325, 347–348 (1985) (finding no Fourth Amendment violation where school officials searched a fourteen-year-old student's purse); *Michael C. v. Gresbach*, 526 F.3d 1008, 1017–18 (7th Cir. 2008) (holding that child caseworkers in a private school who conducted under-the-clothes examinations of children's bodies violated the children's Fourth Amendment rights and were not entitled to qualified immunity because there were clearly established doctrines at the time as to what actions a caseworker must take when conducting an investigation).

[22] We find the fourth case that Haney cites, *Wallace by Wallace v. Batavia School Dist. 101*, 68 F.3d 1010 (7th Cir. 1995), instructive. In that case, teacher James Cliffe ("Cliffe") returned to his classroom to find two sixteen-year-old female students screaming at each other. Cliffe attempted to diffuse the situation, ultimately instructing one of the students, Wallace, to take her books and leave the classroom. Wallace was slow to gather her things, so Cliffe grabbed her by the left wrist and then the right elbow to hasten her exit. Wallace claimed Cliffe caused injury to her elbow, and through her mother, she sued Cliffe and the school corporation under § 1983 for violating her Fourth Amendment rights. The district court granted Cliffe's and the school district's motion for summary judgment, and Wallace appealed.

[23] On appeal, the Seventh Circuit upheld the trial court's grant of summary judgment and explained, "in seeking to maintain order and discipline, a teacher or administrator is simply constrained to taking reasonable action to achieve those goals. Depending on the circumstances, reasonable action may certainly

include the seizure of a student in the face of provocative or disruptive behavior." *Id.* at 1014. And in the context of an alleged Fourth Amendment violation, "[the standard] does not ask what the teacher's intentions were, and it does not ask if the particular student thought the conduct was out of bounds. It asks, at bottom, whether under the circumstances presented and known the seizure was objectively unreasonable." *Id.* at 1015. The court affirmed summary judgment because it found that Cliffe was merely attempting to quell the disruption caused by the yelling, obscenities, and invitation to fight; and therefore, his conduct could not be seen as unreasonable. *Id.* at 1016.

[24]  In the case before us, M.H. was causing a disruption in class while students were taking a test. Moreover, similar to the actions of the teacher in *Wallace*, Butler used reasonable force to induce M.H. to sit back down in her seat in an effort to manage and maintain order over her classroom. The court in *Wallace* noted, "Public school teachers and administrators must have considerable latitude in performing their educational responsibilities, including maintaining order and discipline by reasonably restraining the liberty of students." *Id.*

[25]  Viewing the facts in the light most favorable to Haney, she has failed to establish that Butler violated clearly established law when she spanked or smacked M.H.'s posterior to require her to sit back down in her seat. *See Phillips v. Community Ins. Corp.*, 678 F.3d 513, 520 (7th Cir. 2012) ("Objective reasonableness of force is a legal determination rather than a pure question of fact for the jury to decide."). In fact, because Indiana has authorized the use of moderate corporal punishment by teachers in schools, Butler's conduct clearly

falls within the range of what our legislature has deemed permissible. *Cole by Cole v. Greenfield-Central Community Schools*, 657 F. Supp. 56, 59 (S.D. Ind. 1986). As the Seventh Circuit aptly stated in *Wallace*, "the only thing unreasonable in this scenario is that Wallace has made a federal case out of a routine school disciplinary matter." 68 F.3d at 1015. This is what has happened here, as well. Under the facts and circumstances in the case before us, as well as all applicable law, FWCS was entitled to summary judgment on the § 1983 claim.

## Conclusion

Based on the facts and circumstances before us, FWCS was entitled to summary judgment on the state law battery tort claim because as a matter of law, Butler's alleged conduct falls within the scope of her statutory qualified immunity as a teacher managing a classroom. Additionally, FWCS was entitled to summary judgment on the § 1983 claim because, as a matter of law, Haney failed to show that Butler's conduct could have violated a clearly established right. Accordingly, we reverse and remand.

Barnes, J., and Pyle, J., concur.