**Jason McREYNOLDS, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 82A01–0809–CR–432.

Court of Appeals of Indiana.

March 4, 2009.

Jesse R. Poag, Kinney, Kasha & Buthod, LLP, Evansville, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Tiffany N. Romine, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

CRONE, Judge.

Jason McReynolds appeals his conviction for class D felony battery of a person less than fourteen years of age, asserting that the evidence is insufficient. We affirm.

McReynolds lived in Yavonne Wasson's home. In exchange for a place to stay, McReynolds agreed to babysit Wasson's two children, ten-year-old A.R. and seven-year-old M.R., while she was at work. He also provided the children with transportation to and from school and helped them with homework. McReynolds generally asked Wasson's permission before disciplining the children.

In October of 2006, M.R. was exhibiting some behavioral problems. He was wetting his pants and lying about his homework. Wasson had progressively disciplined M.R., starting with withdrawing privileges and progressing to spanking with a belt. On October 11, 2006, M.R. lied to Wasson about his homework, and she "spanked him three times lightly." Tr. at 183. That evening, as Wasson was saying goodnight to M.R., he told her that he had been hearing voices. During the night, M.R. began banging his head against the wall or the floor. Wasson went into his room to investigate, and

M.R. told her that the voices were telling him to bang his head.

On October 12, 2006, Wasson went to work. There, she scheduled an evaluation for M.R. at Deaconess Cross Pointe, a psychiatric hospital, for 3:00 p.m. that day. McReynolds took A.R. to school, but decided not to take M.R. because he had marks on his face from banging his head. *Id.* at 183. Instead, McReynolds decided to take M.R. to work with him. McReynolds told M.R. to get ready to leave and asked him if he needed to use the restroom. M.R. said no, and then subsequently wet his pants. McReynolds asked him why he lied, and M.R. said that "he didn't know, he didn't care." *Id.* at 226. McReynolds used a belt and a wooden clothes hanger with metal prongs to spank M.R. at least five times. According to M.R., McReynolds spanked him because he lied.[1] *Id.* at 49.

Later, at Deaconess Cross Pointe, Wasson saw blood on the back of M.R.'s shirt, and when she pulled it up, she discovered severe bruising and bleeding on M.R.'s buttocks. An ambulance was called, and M.R. was transported to Deaconess Gateway Hospital. M.R. was treated with antibiotics and pain medication through intravenous therapy and remained in the hospital for at least two days. A week later, his injuries still required bandages.

On October 17, 2006, the State charged McReynolds with battery resulting in serious bodily injury to a person less than fourteen years of age, a class B felony. On July 1, 2008, a jury found McReynolds guilty of class D felony battery to a person less than fourteen years of age, a lesser included offense. The trial court sen-

---

1. McReynolds testified that M.R. punched him in the stomach and that is why he decided to spank M.R. rather than use other disciplinary measures.

tenced McReynolds to eighteen months in the Department of Correction.

■ On appeal, McReynolds argues that the evidence is insufficient to support his conviction. To convict McReynolds of class D felony battery, the State was required to prove beyond a reasonable doubt that he knowingly or intentionally touched another person less than fourteen years old in a rude, insolent, or angry manner. *See* Ind.Code § 35–42–2–1(a)(2)(B).[2] However, "[a] person is justified in engaging in conduct otherwise prohibited if he has legal authority to do so." Ind.Code § 35–41–3–1. "This statute has been interpreted to provide legal authority for a parent to engage in reasonable discipline of her child, even if such conduct would otherwise constitute battery." *State v. Fettig*, 884 N.E.2d 341, 345 (Ind.Ct.App.2008). Thus, "[a] parent is privileged to apply such reasonable force or to impose such reasonable confinement upon his [or her] child as he [or she] reasonably believes to be necessary for its proper control, training, or education." *Willis v. State*, 888 N.E.2d 177, 182 (Ind.2008) (quoting RESTATEMENT OF THE LAW (SECOND) TORTS, § 147(1) (1965)) (amendments in *Willis*).

■ The defense of parental privilege, like self-defense, is a complete defense to battery of a child. *Id.* "[T]o sustain a conviction for battery where a claim of parental privilege has been asserted, the State must prove that either: (1) the force the parent used was unreasonable or (2) the parent's belief that such force was necessary to control her child and prevent misconduct was unreasonable." *Id.* "The State may refute a claim of the defense of

parental privilege by direct rebuttal or by relying upon the sufficiency of the evidence in its case-in-chief." *Id.*

■ Specifically, McReynolds argues that the evidence was insufficient to rebut the parental privilege defense. We observe that

> [t]he standard of review for a challenge to the sufficiency of the evidence to rebut a claim of parental privilege as a defense to battery on a child is the same as the standard for any sufficiency claim: the appellate court neither reweighs the evidence nor judges the credibility of witnesses, and if there is sufficient evidence of probative value to support the conclusion of the trier of fact, the verdict will not be disturbed.

*Willis*, 888 N.E.2d at 182–83 (citations omitted).

■ The State asserts that McReynolds is not a parent, and therefore the parental privilege defense is unavailable to him. McReynolds counters that "the common law provides some custodians with the right to use reasonable corporal punishment in disciplining a child[,]" and that he is just such a custodian. *Dayton v. State*, 501 N.E.2d 482, 485 (Ind.Ct.App.1986). Whether a caregiver such as McReynolds may avail himself of the parental privilege defense is a question of first impression in Indiana. However, both parties rely on *Dayton* in support of their positions, and we therefore begin our analysis with that case.

In *Dayton*, the defendant was married to the mother of four-year-old S.W. After the defendant "whipped" S.W. "because

---

2. The perpetrator must also be at least eighteen years old, but that is not at issue here.

Ind.Code § 35–42–2–1(a)(2)(B).

she had urinated on the couch[,]" he was charged with and convicted of battery. *Id.* at 483. On appeal, he argued, inter alia, that the trial court erred in refusing to give the following jury instruction: "The Court now instructs you that a person who is the parent, guardian or custodian of a child may use reasonable corporal punishment when disciplining said children." *Id.* at 484 (citation and quotation marks omitted). Dayton argued that the instruction was a correct statement of the law under the common law in Indiana.

The *Dayton* court observed that Dayton was not a parent or guardian and therefore turned to a consideration of whether he could be classified as a custodian. The *Dayton* court reasoned as follows:

> The CHINS statute defines custodian as "a person with whom a child resides." Ind.Code Ann. § 31–6–1–2 (Burns Repl. 1980). *Webster's Third New International Dictionary* (1976), p. 559 broadens the definition to anyone "that guards and protects or maintains...." Thus, the spectrum within the custodian classification ranges from a parent at one end to a stranger who agrees to watch a baby or child while the parent is momentarily occupied at the other end. Unquestionably, the common law provides some custodians with the right to use reasonable corporal punishment in disciplining a child. However, just as certainly, the common law does not recognize the right in all custodians. Indeed, Dayton has failed to present us with any authority for the existence of the right in custodians other than parents, schoolteachers and persons *in loco parentis.* Further, he fails to make any argument for such an extension. Therefore, because the instruction includes all custodians, and is not limited to custodi-

ans who are parents, school authorities or persons *in loco parentis,* the instruction is an incorrect statement of the law and properly refused by the trial court.

*Id.* at 485 (footnote omitted). Thus, we learn from Dayton that some custodians have the right to use reasonable corporal punishment, but only those custodians who are persons in loco parentis. *Id.*

In the context of determining whether a guardian was required to provide child support, our supreme court discussed the meaning of in loco parentis as follows:

> In loco parentis means "in the place of a parent." *Black's Law Dictionary* 803 (8th ed.2004). The doctrine refers to a person who has put himself in the situation of a lawful parent by assuming the obligations incident to the parental relation without going through the formalities necessary to legal adoption. It embodies the two ideas of assuming the parental status and discharging the parental duties. This status results from intention and generally may be terminated at any time.
>
> Historically, in loco parentis has been deployed to protect schools and teachers from liability for restricting and disciplining their pupils. It has likewise served as a basis for the authority of juvenile courts.

*Snow v. England,* 862 N.E.2d 664, 666 (Ind.2007) (some citations and quotation marks omitted).

■ McReynolds's argument that he is entitled to the parental privilege defense amounts to the following bald assertion: "The uncontroverted evidence here shows that [he] was given express authority to discipline the child, was in a position of trust, and was responsible for making decisions concerning the child's welfare." Ap-

pellant's Br. at 6. He does not develop the argument nor cite to evidence in the record. Therefore, his argument is waived. *See, e.g., Cooper v. State,* 854 N.E.2d 831, 834 n. 1 (Ind.2006) (stating that defendant's contention was waived because it was "supported neither by cogent argument nor citation to authority").

■■ Waiver notwithstanding, our review of the record leads us to conclude that McReynolds was not a person in loco parentis. McReynolds was neither a stepparent nor romantically involved with M.R.'s mother. He did not act as a father figure, nor did he have the responsibilities of a father or stepfather. He did not make parenting decisions on his own or even in conjunction with Wasson. McReynolds acknowledged that he "didn't really ask questions" about Wasson's parental decisions. Tr. at 229. In short, McReynolds was a babysitter. He drove the children to school and helped them with their homework. When necessary, he asked Wasson's permission to discipline the children, although he did not do so on this occasion. At all times, McReynolds was subject to Wasson's direction. Given the circumstances present here, we conclude that McReynolds was not a person in loco parentis, and therefore the parental privilege defense is not available to him.

■■ Even if we were to conclude that McReynolds was entitled to assert the parental privilege defense, we would conclude that his use of force was unreasonable.

In determining whether force or confinement is reasonable for the control, training, or education of a child, the following factors are to be considered:

(a) whether the actor is a parent;

(b) the age, sex, and physical and mental condition of the child;

(c) the nature of his offense and his apparent motive;

(d) the influence of his example upon other children of the same family or group;

(e) whether the force or confinement is reasonably necessary and appropriate to compel obedience to a proper command;

(f) whether it is disproportionate to the offense, unnecessarily degrading, or likely to cause serious or permanent harm.

*Willis,* 888 N.E.2d at 182 (quoting RESTATEMENT OF THE LAW (SECOND) TORTS, § 150 (1965)). However, this list is not exhaustive, and "not all of the listed factors may be relevant or applicable in every case." *Id.*

In this case, we need not consider all the factors set forth in *Willis.* We need only observe that a seven-year-old child wet his pants and was disciplined such that he received open wounds on his buttocks that required two days of hospitalization. Clearly, the force was disproportionate to the offense, unnecessarily degrading, and could even result in permanent scarring and long-term emotional trauma. Accordingly, we affirm McReynolds's conviction for class D felony battery.

Affirmed.

ROBB, J., and BROWN, J., concur.