**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**DARREN BEDWELL**
Marion County Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KARL M. SCHARNBERG**
Deputy Attorney General
Indianapolis, Indiana

**FILED**

Oct 30 2012, 9:15 am

**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DEMETRIESE GUNN, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1202-CR-152 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Robert Altice, Judge
Cause No. 49G02-1105-FC-035473

**October 30, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Chief Judge**

## Case Summary and Issues

Following a jury trial, Demetriese Gunn was convicted of neglect of a dependent as a Class C felony,[1] and strangulation as a Class D felony.[2] On appeal, Gunn raises two issues, which we restate as: 1) whether the trial court erred in amending the jury verdict after the jury had been discharged, and 2) whether there was sufficient evidence to support the neglect conviction. Concluding that any error on the trial court's part was harmless, and that there was sufficient evidence to support the neglect conviction, we affirm.

## Facts and Procedural History

A.M. was seven years old at the time of the incident(s) underlying this case. While Gunn's brief treats us to a page and a half of descriptions of beatings and abuse that A.M. suffered at the hands of several relatives within the week prior to the incident with Gunn, the pre-trial events that are relevant to the issues on appeal occurred on February 22, 2011. On that day, Gunn, a daycare operator unrelated to A.M., picked A.M. up from school and asked him about an incident from that weekend in which he seems to have kicked his pregnant aunt Vernita in the stomach. A.M. told Gunn to stay out of his business. A.M. started to run, and Gunn grabbed the back of his shirt and threw him into her car. Gunn drove A.M. to the daycare that she operated, and on the way called her sister, Sharhonda, to help her with A.M. Gunn also called A.M.'s aunt Shaneica to come to the daycare. Gunn dragged A.M. into the daycare building by the back of his shirt, choking him. When A.M. told her that he could not breathe, she said

---

[1] Whether the conviction should be for a Class D or a Class C felony is one of the issues on appeal.

[2] A codefendant was also convicted of battery as a Class D felony.

she did not care. Once inside, Gunn and her sister took A.M. to an office and took off his shirt and his belt, breaking the belt in half in the process. Gunn and her sister then beat A.M. with his belt buckle for a short time.

At some point, Gunn sent A.M.'s mother a text telling her to come get A.M. and that A.M. could never come back to the daycare. The message was relayed to A.M.'s aunt Vernita, and then to his aunt Shaneica who went to the daycare to pick A.M. up. Shaneica was told that A.M. was tearing up the office and swearing at Gunn, and so Shaneica slapped A.M. across the face. Apparently Vernita then also showed up at the daycare, and found the doors locked. She could hear A.M. screaming inside, but it took several minutes for someone to let her inside the building. Once inside, she found A.M. crying and she took him home. At home, she saw the bruises on A.M.'s back, and decided to call A.M.'s mother and the police.

Gunn was charged with neglect of a dependent as a Class C felony, two counts of battery as Class D felonies, and strangulation as a Class D felony. After two days of trial, the jury was sent to deliberate, and was given verdict forms. The verdict form for the neglect of a dependent charge listed it as a Class D felony, rather than the Class C with which Gunn was charged. No party objected to the form. When the jury returned the signed verdict form, the judge noted that the form said Class D but that the charge was Class C, and that the court would fix the error. The parties were then given the opportunity to poll the jury, all parties declined, and the jury was discharged. The judge then told the parties that because there was a clerical error he would simply write a correction on the top of the form to note that the verdict was for a Class C felony, and

asked the parties' counsel if that was all right with them. All parties agreed to the correction. This appeal followed.

Additional facts will be supplied as necessary.

## Discussion and Decision

### I. Jury Verdict

#### A. Standard of Review

Amendment of typographical errors in a jury verdict form is subject to a harmless error analysis. See Broadus v. State, 487 N.E.2d 1298, 1306 (Ind. 1986); Perry v. State, 867 N.E.2d 638, 644 (Ind. Ct. App. 2007), trans. denied. A harmless error is one that does not affect the substantial rights of a party. Thomas v. State, 774 N.E.2d 33, 36 (Ind. 2002).

#### B. Amending the Verdict

We agree with Gunn that it would have been preferable for the court to directly question the jury once the error on the verdict form was recognized, to confirm on the record that the jury intended to find Gunn guilty of a Class C felony. However, to the extent that that omission was error, we hold that it was harmless.

The jury instructions read:

The crime of Neglect of a Dependent is defined by statute as follows:
A person having the care of a dependent, whether assumed voluntarily or because of a legal obligation, who knowingly or intentionally places the dependent in a situation that endangers the dependent's life or health commits Neglect of a Dependent, a Class D Felony. The offense is a Class C Felony if it results in bodily injury.
Before you may convict the Defendant as charged in Count I, the State must prove each of the following elements beyond a reasonable doubt.
1. the Defendant, Demetriese Gunn
2. knowingly

4

3. placed A.M. in a situation that actually and appreciably endangered A.M.'s life or health.
4. when A.M. was a dependent and when the Defendant Demetriese Gunn had the care, custody, or control of A.M., whether assumed voluntarily or because of legal obligation
5. and the offense resulted in bodily injury to A.M.
If the State fails to prove each of these elements beyond a reasonable doubt, then you must find the Defendant not guilty of Neglect of a Dependent, a Class C felony.

Appellant's Appendix at 47. The instructions clearly tell the jury that they must find all five elements, including bodily injury, in order to convict Gunn. Because the jury was only instructed on neglect of a dependent as a Class C felony, and not as a Class D felony, they could only have been considering the elements of a Class C felony when the verdict form was signed.

Moreover, Gunn concedes that any evidentiary dispute revolved around "who caused the bodily injury to A.M.," and not whether there was injury. Reply Brief of Appellant at 5 (emphasis in original). The distinguishing element between the Class C and Class D felony in question, however, is whether there was injury at all. The dispute was whether A.M.'s injuries were caused by Gunn, or by A.M.'s parents when they beat him the previous week. The lack of dispute over the fact of A.M.'s injuries, combined with the lack of jury instructions on a Class D felony, makes it clear that the jury was only considering a Class C felony when it found Gunn guilty. This is hardly a case of a defendant being deprived of the right to a jury trial, as Gunn suggests, and any error that the trial court committed in the way that the verdict form was corrected was harmless.

5

## II. Sufficiency of the Evidence

### A. Standard of Review

The standard for reviewing sufficiency of the evidence claims is well settled. We do not reweigh the evidence or assess the credibility of the witnesses. West v. State, 755 N.E.2d 173, 185 (Ind. 2001). Rather, we look to the evidence and reasonable inferences drawn therefrom that support the verdict and will affirm the conviction if there is probative evidence from which a reasonable trier-of-fact could have found the defendant guilty beyond a reasonable doubt. Id.

### B. Sufficient Evidence to Support Neglect

Gunn's argument rests on Willis v. State, in which beatings that resulted in bruising were held to be protected by the parental discipline privilege. 888 N.E.2d 177, 183-84 (Ind. 2008). In Willis, our supreme court adopted the Restatement view on parental privilege, providing that "[a] parent is privileged to apply such reasonable force or to impose such reasonable confinement upon his [or her] child as he [or she] reasonably believes to be necessary for its proper control, training, or education." Id. at 182. The privilege has also been extended to teachers by statute and by the doctrine of in loco parentis. Ind. Code §§ 2o-33-8-8 and -9; Vernonia Sch. Dist. 47J v. Acton, 515 U.S. 646, 654-55 (1995); Marriage of Snow v. England, 862 N.E.2d 664, 666 (Ind. 2007). As a daycare operator, Gunn did not fall under the statutory definition of a teacher. See Ind. Code § 20-18-2-22.

The question then is whether the parental discipline privilege might extend to daycare operators under the doctrine of in loco parentis. In loco parentis means "in the place of a parent," and refers to a doctrine in which a person has put himself in the place

6

of a lawful parent by assuming the obligations of a parental relationship without going through a formal adoption. McReynolds v. State, 901 N.E.2d 1149, 1153 (Ind. Ct. App. 2009). A custodian who is in loco parentis will be extended the right to use reasonable corporal punishment under the parental discipline defense. Id.

In McReynolds, however, we held that a roommate/tenant charged with the care of the child in question did not qualify for in loco parentis status. McReynolds was determined to be essentially a babysitter. He watched the children while their mother was at work, drove the children to school, and helped with their homework. Id. at 1151. He was not a stepparent, did not act as a father figure, did not have the responsibilities of a father or stepfather, and did not make parenting decisions on his own or even in conjunction with the children's mother. Id. at 1154. Under that analysis, a daycare owner/worker certainly would not qualify for in loco parentis status, and therefore the parental discipline defense would not be available to Gunn.

Gunn argues that because the abuse in Willis was determined not to be a serious or permanent harm, the beating here should also not qualify for neglect. But Willis is inapplicable to the case at hand; it sets a marker on the spectrum of abuse and indicates a level of abuse that, when perpetrated by a parent, qualifies for the parental discipline defense; however, those acts, when perpetrated by someone other than a parent or teacher (or someone in loco parentis), may be subject to criminal prosecution. Because Gunn does not qualify for in loco parentis status, it was appropriate for her to be subject to criminal penalties for the abuse in question.

We do not reweigh evidence under a sufficiency of the evidence standard, and there was sufficient evidence here from which a reasonable trier-of-fact could have found

Gunn guilty beyond a reasonable doubt of neglect of a dependent. The evidence presented indicated that while A.M. was in Gunn's care, Gunn endangered his life or health by her involvement in his being beaten with a belt to the point that bruises were left across his back.

## Conclusion

Concluding that any error in the way in which the trial court corrected the verdict form was harmless, and that there was sufficient evidence from which a reasonable trier-of-fact could find Gunn guilty beyond a reasonable doubt, we affirm the judgment of the trial court.

Affirmed.

BAKER, J., and BRADFORD, J., concur.

8