FILED

Dec 09 2016, 9:18 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Deborah Markisohn
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Richard C. Webster
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Klinique J. Champion,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

December 9, 2016

Court of Appeals Case No.
49A02-1604-CR-893

Appeal from the Marion Superior Court

The Honorable Angela Dow Davis, Judge

Trial Court Cause No.
49G16-1511-F6-039447

**Pyle, Judge.**

## Statement of the Case

[1]     Klinique Champion ("Champion") appeals, following a bench trial, her conviction of two counts of intimidation, one as a Class A misdemeanor and

one as a Level 6 felony. She challenges the sufficiency of the evidence to support the convictions. Concluding that the evidence is sufficient, we affirm.

We affirm.

## Issue

Whether there is sufficient evidence to support Champion's intimidation convictions.

## Facts

Champion and Ray Griffin ("Griffin") have two children, J.G. ("J.G."), who was born in 2004, and R.G. ("R.G."), who was born in 2005, (collectively "the children"). Shortly after R.G.'s birth, the parents' relationship ended. Champion was awarded custody of both children and moved to Illinois. In 2011, Griffin married Sabrina Hoggard ("Hoggard"), who also had two children. Griffin and Hoggard together had an additional two children.

In 2014, Griffin filed an emergency petition and was awarded temporary custody of R.G. and J.G. while they were visiting him in Indiana. Following the change of custody, Champion began accusing Griffin and Hoggard of abusing R.G. and J.G. Specifically, Champion made eleven reports of abuse, none of which were substantiated.

On October 27, 2015, Champion sent the following text to Hoggard: "Your better off giving my kids back cause I'm bout to bring h*** to ya door step." (State's Ex. 1) (incorrect grammar and misspellings in original). The next day,

Champion sent the following texts to Hoggard: "How you been treating my kids Im shoot yo s*** up show the police . . . blow yo head off . . . plan yo funeral b**** on my soul." (State's Ex. 1) (incorrect grammar and spellings in original).

[7] On October 29, 2015, an administrator at the children's school contacted Griffin after Champion appeared at the school and asked about the children. Concerned for the children's safety, Griffin asked Hoggard to pick up the children from school.[1] Hoggard was driving the children home when she observed Champion make a U-turn on Post Road and pull up behind her. While they were all stopped at a red light, Champion jumped out of her car, ran up to Hoggard's vehicle, pounded on the window, and threatened to "whoop [Hoggard's] a**." (Tr. 44). When the light turned green, Hoggard hurried to Griffin's apartment. Champion followed her and then drove off.

[8] The following morning, still concerned for his children's safety, Griffin drove them to school. As they all exited the car in the school parking lot, R.G. observed her mother exit a nearby vehicle. Griffin hurried his children toward the school, but before they arrived at the front door, Champion grabbed R.G's coat and yelled for her and J.G. to get into Champion's car. Champion was yelling, "Give me my babies, give me my babies." (Tr. 152). When Griffin attempted to free R.G. from Champion's grasp, Champion placed Griffin in a

---

[1] At that time, Griffin and Hoggard were living separately. However, Hoggard continued to care for R.G. and J.G. after school. Griffin and Hoggard had reconciled at the time of the trial.

headlock and sprayed him in the face with mace. School employees heard the commotion and were able to get the children into the school. Champion fled on foot into a nearby neighborhood.

[9] On November 6, 2015, Champion sent the following texts to Hoggard: "Tell the police Ill be there again . . . Y'all gone die my kids so scared . . . my kids are the ones your abusing keep a watch on your kids they might end up kidnapped and rapped and molested too." (State's Ex. 2) (Incorrect grammar and misspellings in original). Champion was arrested in Illinois that same day.

[10] The State charged Champion with eleven counts, including intimidation as a Class A misdemeanor for the threatening texts that she sent to Hoggard on October 27, 2015. The information charging that offense provides as follows:

> On or about October 27, 2015, Klinique Champion did communicate a threat to Sabrina Hoggard, with the intent that Sabrina Hoggard be placed in fear of retaliation for a prior lawful act, to-wit: having lawful custody of Ms. Champion's children.

(App. 31). The State also charged Champion with intimidation as a Level 6 felony for the threatening texts she sent to Hoggard on November 6, 2015. The information charging that offense provides as follows:

> On or about November 6, 2015, Klinique Champion did communicate a threat to commit a forcible felony, to-wit: murder and/or rape and/or molestation and/or kidnapping to Sabrina Hoggard, with the intent that Sabrina Hoggard be placed in fear of retaliation for a prior lawful act, to-wit: having lawful custody of Ms. Champion's children.

(App. 31-32).

[11]   At trial, Champion admitted sending the texts.  At the conclusion of the presentation of evidence, she filed a motion to dismiss the intimidation counts. Champion specifically argued that the State had failed to prove beyond a reasonable doubt that Hoggard had engaged in the prior lawful act of having lawful custody of Champion's children.  According to Champion, Griffin was the only person who had lawful custody of the children.  The trial court denied Champion's motion, concluding that Hoggard had lawful custody of the children "as it was relayed to her by her husband and they were legally married. She was on the [school's] emergency contact list."  (Tr. 212).

[12]   The trial court subsequently convicted Champion of eight of the eleven charged counts, including the two challenged counts of intimidation.  Champion appeals only the convictions for the two counts of intimidation.

# Decision

[13]   Champion argues that there is insufficient evidence to support the intimidation convictions.  Our standard of review for sufficiency of the evidence claims is well settled.  We consider only the probative evidence and reasonable inferences supporting the verdict.  *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007).  We do not reweigh the evidence or judge witness credibility.  *Id.*  We will affirm the conviction unless no reasonable fact finder could find the elements of the crime proven beyond a reasonable doubt.  *Id.*  The evidence is

sufficient if an inference may be reasonably drawn from it to support the verdict. *Id.* at 147.

[14] To convict Champion of intimidation as a Class A misdemeanor, the State was required to prove beyond a reasonable doubt that Champion communicated a threat to Hoggard with the intent that Hoggard be placed in fear of retaliation for having lawful custody of Champion's children. *See* IND. CODE § 35-45-2-1. To convict Champion of the Level 6 felony, the State had to additionally prove that the threat was to commit a forcible felony. *See id.*

[15] Champion's sole argument is that the State failed to prove that Hoggard had lawful custody of J.G. and R.G. Champion's argument is premised on her belief that lawful custody and legal custody are the same thing. They are not. In *In re Adoption of B.C.H.*, 22 N.E.3d 580, 585 (Ind. 2014), the Indiana Supreme Court explained that lawful custody simply means custody that is not unlawful.[2] The Court further explained that "there are many sources of potential lawful custody that span the spectrum from court-ordered custody of a child to de facto custodianship to informal caretaking arrangements, to name a few." *Id.*

[16] Here, Hoggard, who was married to Griffin, was both J.G.'s and R.G.'s stepmother. A stepparent relationship is a strong indicator that a custodial and

---

[2] Although the Indiana Supreme Court in *B.C.H* was interpreting the meaning of "lawful custody" within INDIANA CODE § 31-19-9-1(a)(3), we find the Court's analysis of this term instructive concerning the issue before us.

parental relationship exists. *Richardson v. Richardson*, 34 N.E.3d 696, 701 (Ind. Ct. App. 2015). As a stepparent, Hoggard stood *in loco parentis* to J.G. and R.G. *In loco parentis* means "in the place of a parent." *McReynolds v. State*, 901 N.E.2d 1149, 1153 (Ind. Ct. App. 2009) (quoting BLACK'S LAW DICTIONARY 803 (8th ed. 2004)). This doctrine refers to a person who has put herself in the situation of a lawful parent by assuming obligations of the parental relationship without going through the formalities of a legal adoption. *McReynolds*, 901 N.E.2d at 1153. This status, which results from intention, embodies both assuming the parental status and discharging the parental duties. *Id.* Here, Hoggard assumed the obligations of the parental relationship with J.G. and R.G. We agree with the State that "Hoggard did have lawful custody of [J.G. and R.G.] as their stepmother and caregiver." (State's Br. 13). We therefore find sufficient evidence to support Champion's intimidation convictions.

[17] Affirmed.

Bradford, J., and Altice, J., concur.